PALAMARG REALTY COMPANY AND WORLD WIDE SEARCHER, INC., PLAINTIFFS-RESPONDENTS, v. JOSEPH REHAC AND ALEXANDER PIATKOWSKI, A NEW JERSEY PARTNERSHIP, *ET AL.*, DEFENDANTS-APPELLANTS.

Argued January 8, 1979—Decided June 27, 1979.

448

*Mr. Frans M. De Nie* argued the cause for appellants (*Messrs. Pascoe and De Nie,* attorneys).

*Mr. Louis A. Veronica* argued the cause for respondents (*Messrs. Veronica and Meloni,* attorneys).

The opinion of the court was delivered by

MOUNTAIN, J. Plaintiffs brought suit to quiet title to two tracts of land in Burlington County. Title to one tract is claimed by defendants Joseph Rehac and Alexander Piatkowski; title to the other tract is claimed by defendants David W. Worth and Ezra B. Sharp. All defendants answered

and filed counterclaims demanding relief similar to that sought by plaintiffs. Both plaintiffs and defendants moved for summary judgment. The trial court, in an unreported opinion, denied plaintiffs' motion and granted those of defendants. The Appellate Division reversed and entered judgment in favor of plaintiffs. 159 *N. J. Super.* 287 (1978). We granted defendants' petition for certification. 78 *N. J.* 338 (1978).

Defendants Rehac and Piatkowski claim title to their tract by deed from Kupire Corporation dated November 21, 1973 and recorded November 26 of that year.[1] The claim of title to the other tract, asserted by Worth and Sharp, rests upon a deed from the same grantor, Kupire Corporation, dated September 13, 1971 and recorded the following day. Although the two sets of defendants received deeds to their respective tracts from a common grantor on different dates, their back titles, to the extent here relevant, are otherwise identical.

Plaintiffs' chain of title as well as the common chain of all defendants derives from a common grantor, the Asbury Company. By quitclaim deed, on February 12, 1913, Asbury Company conveyed to a corporation named Appleby Estates a tract of land which included all the property here in question. The description in the deed is not by metes and bounds, but merely by reference to the earlier deeds that had conveyed the various parcels to the grantor. The instrument was recorded February 18, 1913. On February 15 of the same year, Asbury Company conveyed the particular land here in question (apparently all the land now claimed by both sets of defendants)[2] to one Robert E. Taylor by war-

---

[1] A corrective deed between the same parties was dated April 30, 1974 and recorded May 8, 1974.

[2] Some deed descriptions are so imprecise that we cannot make this statement with absolute certainty.

ranty deed,[3] the tract being described by metes and bounds. Taylor did not record this deed until April 25, 1913. Plaintiffs claim through the Asbury Company-Appleby Estates (Appleby Estates) chain; defendants, through the Asbury Company-Taylor (Taylor) chain.

The next instrument in plaintiffs' chain of title is a warranty deed from Appleby Estates back to Asbury Company dated and recorded in 1924. The description — by earlier deed references only — describes the lands that had been conveyed by Asbury Company to Appleby Estates in 1913, together with an additional tract. The description, however, includes the following proviso:

Excepting therefrom the following named conveyances made by the said party of the first part; 429 acres to Robert E. Taylor,

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(There follow like references to a number of other excepted tracts.) "The said party of the first part" was, of course, Appleby Estates, the grantor named as such in the deed, and Appleby Estates had made no conveyance to Robert E. Taylor. The conveyance of 429 acres to him had been made by its predecessor in title, Asbury Company. The exception quoted above made no reference to the date of the deed to Taylor, nor to the book and page where it had been recorded.

The next significant transaction in the plaintiffs' chain of title occurred about 40 years later. On August 15, 1966, Asbury Company, Appleby Estates and Appleby & Wood Company[4] conveyed to Anthony J. Del Tufo Agency Inc., by quitclaim deed,

. . . all of the real property owned by the grantors herein, wherever situate within the boundaries of the County of Burlington in the State of New Jersey.

---

[3]Inadvertently, the Appellate Division described this deed as being one of bargain and sale. 159 *N. J. Super.* at 290. This point has importance, as will be seen below.

[4]An earlier owner of some of the property.

This instrument was accompanied by a second quitclaim deed, dated August 12, 1966, running in favor of Anthony J. Del Tufo Agency, Inc., and executed by 34 persons purporting to be "all. of the surviving heirs at. law of J. Randolph Appleby and Maria DuBois Appleby, his wife, and their respective spouses," as well as by the five executors of the last will and testament of J. Randloph Appleby, deceased. The description of the property in this deed reads as follows:

> Being all of the real property owned by the grantors herein, wherever situate within the boundaries of the County of Burlington in the State of New Jersey, to which any of them may have derived title through the estates of J. Randolph Appleby or Maria DuBois Appleby, his wife, or from Appleby and Wood Company, Appleby Estates, or the Asbury Company, all being corporations of the State of New Jersey.

Plaintiffs are successors in title, by virtue of a number of mesne conveyances, to the Del Tufo Agency.

Two observations should be made with respect to Appleby Estates' chain of title. First, all instruments in the chain are quitclaim deeds with the exception of the deed of reconveyance in 1924 from Appleby Estates to Asbury Company. It is urged by defendants that plaintiffs' position is fatally weakened by this fact. The law is well settled, however, that a quitclaim deed passes the same estate to a grantee as does a deed of bargain and sale. *See N. J. S. A.* 46:5–3; *Baum v. Canter,* 104 *N. J. Eq.* 224, 225 (E. & A. 1929); *Tunney v. Champion,* 91 *N. J. Super.* 27, 31 (Ch. 1966); *Merrill v. Peterson,* 108 *N. J. Eq.* 79, 81 (Ch. 1931). The point is, therefore, without significance.

Secondly, J. Randolph Appleby was president and majority stockholder of both Asbury Company and Appleby Estates. In his capacity as president of the former he executed the first conveyance from Asbury Company to Appleby Estates and as president of the latter he executed the deed of reconveyance. This fact may be significant.

The Taylor chain, upon which all defendants rely, can be simply described. It will be recalled that Taylor ostensibly took title from Asbury Company by deed dated February 15, 1913 and recorded April 25, 1913. Taylor and his wife thereafter conveyed to Ruth McCrae on July 7, 1932, by deed of bargain and sale with covenant against grantors' acts. The deed was recorded May 23, 1933. There follow a series of warranty deeds culminating in the conveyances to defendants described above. The descriptions in all deeds in this chain of title are by metes and bounds.

The Appellate Division decided that plaintiffs should prevail. While we agree with much of the reasoning of the Appellate Division, we have concluded, for reasons set forth below, that the judgment of that court should be vacated and the case remanded to the trial court for further proceedings consistent with what is set forth herein.

■ Generally speaking, and absent any unusual equity, a court should decide a question of title such as this in the way that will best support and maintain the integrity of the recording system. The underlying purpose of the Recording Act is clear.

An historical study of the [Recording] Act, as well as an analysis of the cases interpreting it, leads to the conclusion that it was designed to compel the recording of instruments affecting title, for the ultimate purpose of permitting purchasers to rely upon the record title and to purchase and hold title to lands within this state with confidence. The means by which the compulsion to record is accomplished is by favoring a recording purchaser, both by empowering him to divest a former non-recording title owner and by preventing a subsequent purchaser from divesting him of title. This ability to deprive a prior and bona fide purchaser for value of his property shows a genuine favoritism toward a recording purchaser. It is a clear mandate that the recording purchaser be given every consideration permitted by the law, including all favorable presumptions of law and fact. It is likewise a clear expression that a purchaser be able to rely upon the record title. [*Jones, The New Jersey Recording Act — A Study of its Policy*, 12 *Rutgers L. Rev.* 328, 329–30 (1957)]

This policy is clearly established in the New Jersey Recording Act, pertinent parts of which provide as follows:

Except as otherwise provided herein, whenever any deed . . . shall have been or shall be duly recorded . . . such record shall, from that time, be notice to all subsequent . . . purchasers . . . of the execution of the deed . . . so recorded and of the contents thereof.
[*N. J. S. A.* 46:21–1]

Every deed . . . shall, until duly recorded . . ., be void and of no effect against . . . all subsequent bona fide purchasers . . . for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded. . . . [*N. J. S. A.* 46:22–1]

█ This legislation makes New Jersey a "notice/race" type jurisdiction. 4 *American Law of Property* § 17.5, at 541–45 & n. 63 (Casner ed. 1952). This means that if a common grantor sells the same land to two persons, the first to record — even though he may have been the second to purchase — will prevail, but only so long as he had no actual notice of the earlier sale. *Id.* at 544.

█ We examine first the deed from Asbury Company to Appleby Estates dated February 12, 1913 and recorded six days later. It was executed by J. Randolph Appleby as president of Asbury Company. It is not denied that Appleby was also at that time president of the grantee corporation, Appleby Estates. He, alone or with his wife, owned a substantial majority of the shares of both corporations. In fact it may also be reasonably inferred from the rather meager record — though not certainly determined — that the other shareholders of both corporations were all members of the Appleby family. It was also in his capacity as president of Asbury Company that he executed the deed dated February 15, 1913 from that corporation to Robert E. Taylor. Were it not for these facts, we would agree with the Appellate Division's conclusion that, because the Asbury Company-Appleby Estates deed was the first recorded, "Appleby Estates title was, in 1913, superior to that of Taylor . . . ." 159 *N. J. Super.* at 292.

Although Taylor, had he been made aware of the conflicting conveyance to Appleby Estates, might have brought a suit for damages against Asbury Company on the warranty in his deed, it is much more likely that he would have sought equitable relief against Asbury Company, Appleby Estates and J. Randolph Appleby by way of cancellation or removal of cloud on title. Had there been such a title contest in 1913, Taylor would most surely have won. We need cite no authority to support the obvious conclusion that J. Randolph Appleby's personal knowledge of the deed to Taylor would have been attributed to Appleby Estates. As far as the rights of third persons were concerned, one corporation was simply the *alter ego* of the other, and both stood in that position with respect to J. Randolph Appleby. This would have prevented Appleby Estates from successfully asserting its prior recording as a defense to Taylor's claim. It is, therefore, imprecise to say that Appleby Estates' title was superior to Taylor's in 1913. There was, however, no title contest at that time.

The prospects for a successful title suit by Taylor would not have been diminished by the deed of reconveyance to Asbury Company in 1924.[5] Notice of the Taylor deed still would have been attributed to both Appleby Estates and Asbury Company. In 1924 the latter, upon reacquiring title, did not become a purchaser for value without notice. Up to this point an action by Taylor, of the kind suggested above, presumably would have succeeded.

The superiority of the Taylor chain fades, however, with the 1966 conveyances to the plaintiffs' predecessor in interest, the Del Tufo Agency. It will be recalled that Asbury Company conveyed to Appleby Estates by deed dated February 12, 1913 and recorded February 18, 1913. The Taylor deed

[5]The question raised by the exception contained in the deed of reconveyance as well as the issue of estoppel by deed presented thereby, are both discussed below.

was dated February 15, 1913 and recorded April 25 of the same year. Therefore, when the Del Tufo Agency took title by virtue of the two deeds of which mention is made above, it did not have record notice of the Taylor deed. A leading treatise states that:

> If after the recording of a deed from an owner there is later recorded another deed from the same grantor to a different grantee, whether earlier or later in date, a purchaser from the first grantee is without notice of any rights of the second grantee unless it is by reason of some fact other than the record; the purchaser's obligation to examine the grantor's indices as to that grantor ceased at the date of recording of the first deed. This principle has general application in the case of two successive deeds from the same grantor, both deeds recorded in the order of their execution; a party thereafter purchasing from the first grantee is not charged with notice by reason of the record then existing of the second deed. [4 *American Law of Property* § 17.21, at 596–97 (Casner ed. 1952)]

█ Although the New Jersey Recording Act appears to say that a subsequent purchaser will *always* be deemed to have notice of, and be bound by, a prior recorded deed touching the same property, this is not in fact the case. The statutes have been consistently interpreted to mean that the subsequent purchaser will be bound only by those instruments which can be discovered by a "reasonable" search of the particular chain of title. That is, a prospective purchaser need only search the records to discover conveyances or other significant acts of an owner from the date the deed into that person was recorded until the date he relinquishes record title. A leading case in New Jersey is *Glorieux v. Lighthipe*, 88 *N. J. L.* 199 (E. & A. 1915). There Justice Swayze, speaking for a unanimous court said,

> A purchaser may well be held bound to examine or neglect at his peril, the record of the conveyances under which he claims, but it would impose an intolerable burden to compel him to examine all conveyances made by every one in his chain of title.
>
> [88 *N. J. L.* at 203]

The same rule had been announced in the earlier case of *Bingham v. Kirkland,* 34 *N. J. Eq.* 229, 234 (E. & A. 1881). *See also Solomon v. Canter,* 113 *N. J. Eq.* 43, 45 (E. & A. 1933); *Young v. Calley Land Co.,* 103 *N. J. Eq.* 478, 480 (Ch. 1928).

 Although it is thus clear that Del Tufo Agency had no record notice, it still may have had *actual* notice. Because the case was decided on motion for summary judgment, this particular point was not adequately explored. Defendants will be given an opportunity to examine that question on remand.[6]

 On remand, except in the respect noted below, the court need not concern itself with the 1924 deed of reconveyance from Appleby Estates to Asbury Company containing, as it does, the exception with respect to 429 acres described as having been previously conveyed by Appleby Estates to Robert E. Taylor.[7] As we have seen, there had

---

[6]It is appropriate in this connection to bear in mind that defendants would not be entitled to succeed merely by showing that Del Tufo Agency had actual notice. It must also be shown that subsequent purchasers had such actual notice.

Unless the contrary appears from the record, the question of whether prior owners in a chain of title were innocent purchasers is not material to an examiner, provided only his client is such at the time he completes his purchase. This is because, in all jurisdictions, a purchaser without notice from an owner who has notice is protected. This is not peculiar to the recording acts, but is merely the application of a long-established equity doctrine as to the effect of notice. It is further the case that a purchaser will be protected, even though he has notice of an unrecorded title or claim, provided his vendor was an innocent purchaser. [*Patton on Titles,* § 15 at 68–69 (1938)]

3 *Pomeroy, Equity Jurisprudence* §§ 754, 754a, at 55–61 (5th ed. 1941).

[7]We do not wish to be understood as foreclosing the possibility that expert testimony presented on remand may suggest that the exception in this deed should be deemed sufficient notice to spur further inquiry. In this latter event, the point should be considered anew in the light of such evidence and relevant law.

been no such conveyance by Appleby Estates, although there had been such a conveyance by its predecessor in title, Asbury Company. Defendant argues that this recital of an exception should be deemed to constitute notice of the Taylor deed to subsequent purchasers in plaintiffs' chain of title. Although we reserve final judgment, we tentatively feel that contention lacks merit. The recital gives notice only of a non-existent conveyance. Had the exception either referred to the proper grantor — Asbury Company — or to the book and page where the record of the instrument could be found, then indeed there would have been notice. Here, both were lacking.[8] Nevertheless, final decision on this point should await the taking of expert proofs on remand.

Defendants' final and most vigorously pressed argument is that they are entitled to prevail upon a proper application of the doctrine of estoppel by deed. This issue was not addressed by the Appellate Division, perhaps because, as mentioned above, that court mistakenly thought the deed from Asbury Company to Taylor to have been one of bargain and sale rather than of warranty. Defendants contend that even if Taylor did not acquire title to the premises in question in 1913 — the deed to Appleby Estates having been first recorded — nevertheless he did acquire title in 1924 when the property was reconveyed to Asbury Company.

Under the well-settled doctrine of estoppel by deed, a grantor who executes a general warranty deed purporting to convey land to which he has no title will not be heard

---

[8]We note in passing that this is not a case of a recital calling attention to an instrument that could have been, but was not recorded. Cases dealing with that somewhat similar problem include *Westervelt v. Wyckoff*, 32 *N. J. Eq.* 188 (Ch. 1880) ; *Roll v. Rea*, 50 *N. J. L.* 264 (Sup. Ct. 1888), aff'd, 57 *N. J. L.* 647 (E. & A. 1895) and *McCrea v. Newman*, 46 *N. J. Eq.* 473 (Ch. 1890). *See also Kennedy v. Island Development Co.*, 9 *N. J. Misc.* 921 (Cir. Ct. 1931), and the able discussion in *Jones*, supra, 12 *Rutgers L. Rev.* at 346–53. It is to this problem that *N. J. S. A.* 46:22–2, to which counsel refer, is addressed. But that issue is not before us here.

to claim title against his grantee, if he (the grantor) subsequently acquires title. *Moore v. Rake,* 26 *N. J. L.* 574, 580, 583, 587 (E. & A. 1857) ; *see Tunney v. Champion, supra,* 91 *N. J. Super.* at 30–31; *Lena v. Yannelli,* 78 *N. J. Super.* 257, 262–63 (Ch. Div. 1963) ; *Vreeland v. Blauvelt,* 23 *N. J. Eq.* 483, 485 (Ch. 1873). It will be seen that an application of this doctrine would, presumptively at least, either place title in Taylor upon the execution and delivery of the deed of reconveyance from Appleby Estates to Asbury Company in 1924 or give Taylor a right to equitable relief by way of specific performance. Plaintiffs answer by saying that estoppel by deed operates only to vest title in the original grantee and his successors in interest if the grantor, subsequent to his acquisition of good title, does not thereafter convey the property to a purchaser for value without notice. Such a conveyance apparently took place, plaintiffs point out, upon the transfer of title to the Del Tufo Agency in 1966.

Whether under circumstances such as this, title should be held to inure to the original grantee and his successors or pass to the subsequent grantee has been the subject of much controversy. *See* 3 *American Law of Property* § 15.22, at 849–50 (Casner ed. 1952). The case law in our state clearly favors the subsequent purchaser for value without notice. *Wack v. Collingswood Extension Realty Co.,* 114 *N. J. Eq.* 253 (E. & A. 1933) ; *see Robinson-Shore Development Co. v. Gallagher,* 26 *N. J.* 59, 78 (1958) (Weintraub, C. J., concurring) ; *Lena v. Yannelli, supra,* 78 *N. J. Super.* 257, 262–63 (Ch. Div. 1963) (dicta) ; *Tunney v. Champion, supra,* 91 *N. J. Super.* at 29–30.

Furthermore, this conclusion is in conformity with the requirements of our Recording Act and supports the integrity of the recording system. *See* especially, *Philbrick, Limits of Record Search and Therefore of Notice,* 93 *U. Pa. L. Rev.* 125, 181–86 (1944). It is likely that a correctly undertaken title search by the Del Tufo Agency in 1966 — or by any of its successors in title — would not have discovered

the original deed from Asbury Company to Taylor.[9] On the other hand, such a search by Taylor would have revealed the fact that Asbury had already conveyed out the property to Appleby Estates and the latter had recorded its deed before the Taylor deed was recorded.

There is a further point that must be considered, but which has been neither briefed nor argued. As we set forth at the beginning of this opinion, defendants Rehac and Piatkowski ostensibly acquired title to the premises which they claim to own in November 1973. We may take judicial notice of the fact that it is the custom of title searchers and conveyancers in New Jersey to search a title only for sixty years and until a warranty deed is found in the chain of title. A sixty-year search undertaken in November, 1973 would extend back to November, 1913. A further search for a warranty deed would presumably end upon discovery of the Asbury Company to Taylor deed recorded in April of that year. Thus the deed from Asbury Company to Appleby Estates would not be discovered. Would such a title search meet the customary requirements as established by conveyancing practice in New Jersey?[10] If so, how much force should be given to this fact? Should we adopt the custom of conveyancers and make the sixty-year search convention a rule of law? How could this be made to harmonize with the Recording Act and other relevant statutes? To what extent and over what period of time has reliance been placed on the sixty-year search? How did this custom develop and upon what law does it rest? What is the attitude of title companies to the problem that this case presents? We would pre-

[9] *See* footnote 7, *supra*.

[10] In *Pioneer National Title Insurance Co. v. Lucas*, 155 *N. J. Super.* 332 (App. Div. 1978), *aff'd o. b.*, 78 *N. J.* 320 (1978), the court said "[t]he unrefuted testimony at trial was that a 60-year search is standard in the title insurance industry." 155 *N. J. Super.* at 336, n. 1.

fer not to decide questions with such potentially far-reaching effects in a factual vacuum.

We are mindful that the art of title searching, upon which so much of our conveyancing practice rests, has been created in very large part without the aid of legislation and has received little attention in judicial decisions.

No statute has ever mentioned search, much less indicated the time or records over which it must extend. . . . [*Philbrick, supra*, 93 *U. Pa. L. Rev.* at 137]

On remand to the trial court, expert testimony should be offered and received as to the customs and usages of the conveyancing bar and title companies with respect to what has been discussed above. It might be helpful to invite the New Jersey Land Title Insurance Association to appear and participate as *amicus curiae*. The trial judge is to make findings of fact and conclusions of law with respect to the issues before him. We do not retain jurisdiction but any allegedly aggrieved party may make application directly to this Court by motion for direct certification immediately following the rendition of the trial court opinion and judgment.

The judgment of the Appellate Division is vacated and the cause is remanded to the trial court for further proceedings consistent with what has been set forth above.

*For vacation and remandment*—Chief Justice Hughes and Justices Mountain, Pashman, Clifford, Schreiber and Handler—6.