254 N.J. Super. 19 (1992)
603 A.2d 49
FREDERICK C. MEZEY, JOHN P. CHESTER, GREGORY PLOUSSAS, PETER J. FLEMING AND FRANK LISOWSKY, T/A THE CHESTER PARTNERSHIP, AND GLEN NEWMAN, PLAINTIFFS-APPELLANTS,
v.
UNITED JERSEY BANK/CENTRAL, N.A., A NATIONAL BANKING ASSOCIATION FORMED UNDER THE LAWS OF THE UNITED STATES OF AMERICA, AND EDWARD KUCHMAN AND JOYCE KUCHMAN, HUSBAND AND WIFE, DEFENDANTS-RESPONDENTS, AND BRINKERHOFF HOME BUILDERS, INC., A NEW JERSEY CORPORATION; AND THE STATE OF NEW JERSEY, DEFENDANTS. AND UNITED JERSEY BANK/CENTRAL, N.A., A NATIONAL BANKING ASSOCIATION, DEFENDANT/THIRD PARTY PLAINTIFF-RESPONDENT,
v.
STANLEY PURZYCKI, AND PURZYCKI & GORNEY, THIRD PARTY DEFENDANTS-RESPONDENTS, AND WAYNE W. BRINKERHOFF, CAROL BRINKERHOFF, LOUISE BRINKERHOFF, BRINKERHOFF HOME BUILDERS, INC., AND FIRST STATE BANK, THIRD PARTY DEFENDANTS. WAYNE BRINKERHOFF, CAROL ANN BRINKERHOFF, AND BRINKERHOFF CONSTRUCTION CO., PLAINTIFFS,
v.
UNITED JERSEY BANK/CENTRAL, N.A., JOSEPH VALES, ESQ., STANLEY PURZYCKI, PURZYCKI & GORNEY, AND HILL, WALLACK & MASANOFF, DEFENDANTS-RESPONDENTS, AND TRI-COUNTY LAWYERS SERVICE, INC., AND TRANSAMERICA TITLE INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1992.
Decided January 30, 1992.
*21 Before Judges ANTELL, BAIME and THOMAS.
Frederick C. Mezey argued the cause for appellants (Mezey, Mezey & Cohen, attorneys; Frederick C. Mezey and Mitchell Newman on the brief).
Howard A. Teichman argued the cause for respondent United Jersey Bank/Central, N.A. (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys; Howard A. Teichman on the brief).
Cheryl L. Baratta argued the cause for respondents Edward Kuchman and Joyce Kuchman (Cheryl L. Baratta on the letter-brief).
Robert W. McAndrew argued the cause for Third Party Defendants-Respondents Stanley Purzycki and Purzycki & *22 Gorney (Voorhees & Acciavatti, attorneys; Robert W. McAndrew on the brief).
James G. O'Donohue argued the cause for respondents Joseph Vale and Hill, Wallack & Masanoff (Hill, Wallack, attorneys; James G. O'Donohue on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents questions of first impression under the Notice of Settlement Act (N.J.S.A. 46:16A-1 through -5). The purpose of the Act is to eliminate problems that arise from the appearance of an unforeseen or unexpected interest or lien which is recorded between the completion of the title search and the recordation of the conveyance documents after closing. The statute permits a party to file an instrument that gives notice of a pending conveyance or mortgage and protects the proposed interest to be acquired for a limited period of time. The issue presented is whether the protection granted by the Act applies to a party who files a notice of settlement notwithstanding its actual knowledge of another's prospective unrecorded interest adverse to that which it is about to acquire.
On March 5, 1987, Brass Castle Co-Tenancy, a joint venture comprised of the plaintiffs (the Mezey group) entered into a contract to sell a large tract of land to Brinkerhoff Home Builders, Inc. (BHB) for $3,984,000. Under the agreement, BHB was to sign a series of notes totalling $1,397,000 to be secured by a purchase money mortgage. The contract provided that the mortgage was to be subordinated to a land acquisition loan up to $1,035,000. In addition, the contract stated that BHB would assume a mortgage to Edward and Joyce Kuchman in the amount of $132,000. The Kuchmans owned an 18.66 acre parcel of land contiguous to that of plaintiffs and were under contract to sell their property to the Mezey group. Accordingly, the Kuchman mortgage would operate as a lien only as to this 18.66 acre portion of the property.
*23 The land acquisition loan was provided by defendant United Jersey Bank/Central, N.A. (UJB) in the amount of $2,500,000. The loan commitment acknowledged plaintiffs' and Kuchman's mortgages, but provided that UJB was to have a first lien. Upon receipt of the commitment, Stanley Purzycki, BHB's attorney, filed a notice of settlement which was recorded on April 20, 1989.
What transpired thereafter is hotly disputed. According to plaintiffs, Purzycki immediately informed UJB that Kuchman's mortgage was to be a first lien on the 18.66 acre parcel and that plaintiffs mortgage was to be subordinated only up to $1,035,000 on the remaining property. In addition, Purzycki sent a copy of the contract containing the language limiting the subordination of plaintiffs' mortgage to Gregory Eshleman, UJB's officer in charge of the loan. Purzycki also allegedly apprised Joseph Vales, UJB's attorney, of the discrepancy between the commitment and the contract. At about the same time, Purzycki sent an opinion letter to UJB and Vales, assuring UJB of its first lien priority on the property. We note, however, that Purzycki's representation was somewhat equivocal. Specifically, Purzycki qualified his opinion respecting UJB's first lien status, noting that it was subject to "such exceptions as have been approved by the Bank."
Although Vales later denied that UJB consented to a modification of its loan commitment to reflect the limited nature of the subordination of plaintiffs' mortgage, Eshleman candidly acknowledged his understanding of the modification in a subsequent memorandum. In the memorandum, Eshleman recounted that at some point he became aware of the inconsistent provisions in the contract and loan commitment. According to Eshleman, Vales advised him that the $1,035,000 "cap on the Brass Castle subordination would not have a material effect on [UJB's] lien." Eshleman acknowledged that, based on this advice, he "approved [the] closing with these minor changes."
*24 A bifurcated closing took place on April 24, 1989. At the morning session, BHB signed a note and mortgage purporting to give UJB a first lien on the property. No mention was made of the Kuchman mortgage or the $1,035,000 limitation on the subordination of plaintiffs' lien. In the afternoon, BHB executed a note and a purchase money mortgage to plaintiffs which included the agreed upon language allowing subordination up to $1,035,000.
In accordance with Purzycki's instructions, plaintiffs' and Kuchmans' mortgages were recorded first and then that of UJB. When BHB subsequently defaulted, plaintiffs instituted a foreclosure action, claiming that they had priority beyond the $1,035,000 subordination. Kuchman claimed that its mortgage constituted a first lien on the 18.66 acre parcel. Relying upon the notice of settlement, UJB asserted that its mortgage constituted a first lien on the entire property, notwithstanding its knowledge of the $1,035,000 limitation on the subordination of plaintiffs' mortgage. BHB then brought suit against Purzycki, claiming that he was negligent in failing to protect UJB's first lien status. That action was consolidated with the foreclosure suit.
We need not describe the welter of motions and cross-motions filed by the parties. Suffice it to say, the Chancery Division granted UJB's motion for summary judgment. In a letter opinion, the court held that plaintiffs' contract rights were overridden by UJB's filing of the notice of settlement. More specifically, the judge reasoned that the Act must be "strictly applied" and that UJB's actual knowledge of the $1,035,000 limitation on the subordination of plaintiffs' mortgage was irrelevant. Apparently, UJB decided not to press its right to priority over the Kuchman mortgage. The summary judgment was said not to affect Kuchman's first lien on the 18.66 acre parcel. The court granted Purzycki's motion to dismiss BHB's complaint since the issue raised, UJB's first mortgage priority, was now moot. We granted plaintiffs' motion for leave to appeal and now reverse.
*25 Prior to the adoption of the Notice of Settlement Act, purchasers of property in New Jersey were plagued by the existence of unanticipated prior interests discovered only after the closing and disbursement of mortgage proceeds. See N.J. Bank v. Azco Realty Co., Inc., 148 N.J. Super. 159, 372 A.2d 356 (App.Div.), certif. denied, 74 N.J. 280, 377 A.2d 684 (1977); Margalotti, Notice of Settlement Act, 105 N.J.L.J. 353 (1980). The practical inability to complete a continuation search as of the actual closing, coupled with the unavoidable delay between the recording or filing of an instrument and its appearance in the appropriate indices, provided ample opportunity for the specter of unanticipated prior interests to arise. Margalotti, Notice of Settlement Act, 105 N.J.L.J. at 353.
In order to cure this problem, the New Jersey State Bar Association established a special subcommittee whose recommendations ultimately formed the genesis of the present statutory scheme. Ibid. Specifically, the subcommittee recommended that our recording statutes be amended to permit the filing of an instrument which would provide constructive notice of a prospective conveyance and protect the interests to be acquired from unanticipated intervening liens. Pursuant to this recommendation, our Legislature enacted N.J.S.A. 46:16A-1, which provides in part:
Any party, or his legal representative, to a settlement which will convey legal or equitable title to real estate or any interest therein or create any lien thereon by way of a mortgage, may file an instrument to be designated a "notice of settlement" with the county recording officer of the county in which the real estate is situate.
N.J.S.A. 46:16A-1 is supplemented by N.J.S.A. 46:16A-4, which states that after the filing of a notice of settlement, persons claiming an interest in the property are deemed to have knowledge of the anticipated conveyance and are thereby subject to its terms. More specifically, N.J.S.A. 46:16A-4 reads:
After the filing of a notice of settlement, any person claiming title to, an interest in or a lien upon the real estate described in the notice through any party in the notice, shall be deemed to have acquired said title, interest or lien with knowledge of the anticipated settlement and shall be subject to the terms, *26 conditions and provisions of the deed or mortgage between the parties filed within the period provided by section 5 of this act.
The notice is effective for a 45 day period. N.J.S.A. 46:16A-5. If for some reason the prospective conveyance is aborted, any intervening lien is to attach at the expiration of the 45 days. Ibid.
As we noted earlier, the articulated objective of the Act is to protect prospective buyers or mortgagees from acquiring deficient title because of the appearance of an intervening lien between the time the search is completed and the conveyance documents are recorded. See Statement of the Senate Judiciary Committee, Senate No. 3169, L. 1979, c. 406. We have been cautioned that, "absent any unusual equity," the stability of titles requires the judiciary to follow the course that "will best support and maintain the integrity of the recording system." Palamarg Realty Company v. Rehac, 80 N.J. 446, 453, 404 A.2d 21 (1979). We acknowledge that generally this objective can best be furthered by favoring a recording purchaser, both by empowering him to divest a former non-recording title owner and by preventing others from successfully challenging his interest. Jones, The New Jersey Recording Act  A Study of Its Policy, 12 Rutgers L.Rev. 328, 329-30 (1957). This policy is clearly established in the New Jersey Recording Act, see N.J.S.A. 46:21-1 and N.J.S.A. 46:22-1, and is equally applicable to the statutes dealing with notices of settlement.
This much conceded, we would be myopic were we to blithely ignore plaintiffs' allegation that UJB was well aware of the limited terms of the subordination agreement. Under our recording statutes, the first to record will prevail, but only so long as he had no actual notice of an innocent party's adverse interest. See Palamarg Realty Company v. Rehac, 80 N.J. at 454, 404 A.2d 21; Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 107, 581 A.2d 893 (App.Div. 1990); Holmes v. Stout, 10 N.J. Eq. 419, 427 (E. & A. 1855); Michalski v. United States of America, 49 N.J. Super. 104, 108, 139 A.2d 324 *27 (Ch.Div. 1958); McGrath v. Norcross, 78 N.J. Eq. 120, 136, 79 A. 85 (Ch. 1911), aff'd, 82 N.J. Eq. 367, 91 A. 1069 (E. & A. 1913); Coleman v. Barklew, 27 N.J.L. 357, 359 (Sup.Ct. 1859); Roger A. Cunningham et al, The Law of Property 787 (1984); 8 George W. Thompson, Real Property, § 4324, at 425 (1963). Although the wording of N.J.S.A. 46:16A-4 differs from that of N.J.S.A. 46:22-1, we are of the view that the same essential principles apply and that actual notice of an adverse claim of an innocent person should defeat the interest of a party who, harboring such knowledge, nevertheless files a notice of settlement. In other words, we view the Act as a "race/notice" statute with its concomitant advantage of precluding any benefit when notice of a prior interest exists. See Richard R. Powell, 6A The Law of Real Property § 905[1][iii] (Patrick J. Rohan ed. 1990).
Our construction of the statutory scheme is consonant with the Legislature's expressed objective of according protection only against "unanticipated" and "unforeseen" intervening liens, see Margalotti, Notice of Settlement Act, 105 N.J.L.J. at 353; Statement of the Senate Judiciary Committee, Senate No. 3391, L. 1979, c. 406. It comports with well-settled principles of equity and advances sound business ethics and fair dealing. See Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880 (1979); Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-504, 117 A.2d 585 (1955); Omrod v. N.J. Department of Civil Service, 151 N.J. Super. 54, 59, 376 A.2d 554 (App.Div.), certif. denied, 75 N.J. 534, 384 A.2d 513 (1977); Fairken Associates v. Hutchin, 223 N.J. Super. 274, 280, 538 A.2d 465 (Law Div. 1987); Schmidt v. Schmidt, 220 N.J. Super. 46, 52, 531 A.2d 385 (Ch.Div. 1987); Foley Machinery Co. v. Amland Contractors, Inc., 209 N.J. Super. 70, 75, 506 A.2d 1263 (App.Div. 1986). Moreover, this interpretation does no violence to the stability of titles or the integrity of the recording system. Contrary to UJB's contention, our holding will not open the floodgates to unnecessary litigation. As we have pointed out, New Jersey's *28 recording statutes have historically permitted challenges to a record owner who has obtained title with knowledge of an innocent party's unrecorded interest. We thus hold that a party who has actual knowledge of another's prospective adverse interest is not protected by the Act merely by filing of a notice of settlement.
Because a genuine issue of material fact exists, summary judgment was improperly granted. Specifically, the question of UJB's knowledge of the limitation on plaintiffs' subordination agreement should be fully explored and developed. The issue is an important one and should not be decided on the wholly inadequate record presented to us. See Jackson v. Muhlenberg Hospital, 53 N.J. 138, 142, 249 A.2d 65 (1969).
The orders granting summary judgment are reversed and the matter is remanded for a plenary hearing.