**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1179-22

PAUL A. WOODFORD,

     Plaintiff-Appellant,

v.

LORI ALEXIS LYNN-
MARTINOLICH, previously
known as LORI GARFINKEL,
LORI LYNN GARFINKEL,
LORI L. GARFINKEL, and
LORI LYNN, also known as
LORI LYNN MARTINOLICH,
LORI L. MARTINOLICH,
LORI Z. LYNN-MARTINOLICH,
and LORI ALEXIS MARTINOLICH,
PETER GARFINKEL, UNITED
STATES OF AMERICA, INTERNAL
REVENUE SERVICE, and
CASHA, CASHA & EVANS, LLC,

     Defendants,

and

DIVISION OF TAXATION,
DIVISION OF MEDICAID
FRAUD, and FREEDOM

MORTGAGE CORPORATION,[1]

    Defendants-Respondents.

Submitted February 27, 2024 – Decided July 5, 2024

Before Judges Rose and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000193-21.

Paul A. Woodford, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent State of New Jersey, Office of the State Comptroller, Division of Medicaid Fraud (Melissa H. Raksa, Assistant Attorney General, of counsel; Francis Xavier Baker, Deputy Attorney General, on the brief).

Brian D. Romanowsky, attorney for respondent Freedom Mortgage Corporation.

Davison, Eastman, Muñoz, Paone, PA, attorneys for amicus curiae New Jersey Land Title Association (Alan Lee Poliner, on the brief).

PER CURIAM

Plaintiff Paul A. Woodford, a self-represented retired attorney, appeals from companion General Equity Part orders, declaring the priority of liens among various creditors on residential property located in West Orange and

---

[1] Improperly pled as Freedom Mortgage Company.

owned by defendant Lori Alexis Lynn-Martinolich (debtor).[2]  The orders were issued on November 14, 2022, following cross-motions for summary judgment filed by plaintiff and defendants Freedom Mortgage Corporation (FMC) and New Jersey Division of Medicaid Fraud (MFD) at the close of discovery.[3]  Based on our de novo review of the limited record, we conclude the motion judge prematurely granted summary judgment.  We therefore vacate both orders under review, and remand for further proceedings.

## I.

We summarize the pertinent facts and procedural history from the motion record, which primarily consists of documentary evidence.  Although plaintiff's 470-page appendix includes debtor's deposition in a prior matter, no depositions were taken of any witnesses in the present matter; no expert reports were exchanged among the parties.

In his March 2022 amended complaint, plaintiff asserted debtor was known as Lori Garfinkel when he represented her during a post-judgment

---

[2]  Unless it is necessary to identify defendant Lori Alexis Lynn-Martinolich by one of her various names, we use "debtor" for ease of reference.

[3]  MFD does not cross-appeal from the third November 14, 2022 order seeking a declaration that its lien enjoyed priority status.

custody hearing filed by her ex-husband, defendant Peter Garfinkel. On May 30, 2012, plaintiff obtained a $66,946 judgment, plus costs, against debtor. On July 23, 2012, the judgment was recorded as a lien against "Lori Garfinkel" by the Superior Court Clerk in Trenton.

In his March 2022 amended complaint, plaintiff named several creditors who had docketed judgments against debtor under various names, including: Lori Alexis Lynn Martinolich, Lori Garfinkel, Lori Lynn Garfinkel, Lori L. Garfinkel, Lori Lynn, Lori Lynn Martinolich, Lori Z. Lynn-Martinolich, and Lori Alexis Martinolich.

In essence, plaintiff asserted, unbeknownst to him, debtor changed her name to Lori Lynn after he recorded his lien in 2012. Debtor then married Paul William Martinolich, who died in December 2017. The following year, in August 2018, debtor purchased the West Orange property under the name, Lori Alexis Lynn-Martinolich, with a purchase money mortgage made by Family First Funding, LLC. In July 2019, debtor refinanced the West Orange property with defendant FMC under the name, Lori Alexis Lynn-Martinolich. At some point, plaintiff discovered FMC recorded its mortgage on August 1, 2019, and asserted a first lien on the West Orange property.

Accordingly, plaintiff filed the present action to determine the priority of liens, including the following[4]:

- April 28, 2011 – New Jersey Division of Taxation's (NJDOT) $1,257.62 tax lien against "Lori Garfinkel";

- July 23, 2012 – plaintiff's $66,946 lien against "Lori Garfinkel" described above;

- February 23, 2017 – NJDOT's $3,571.61 tax lien against "Lori L. Garfinkel";

- August 1, 2019 – FMC's mortgage against "Lori Alexis Lynn-Martinolich";

- September 19, 2019 – United States Internal Revenue Service's (IRS) $17,101.33 tax lien against "Lori Z. Lynn-Martinolich"; and

- August 19, 2019 – MFD's $627,419 amended certificate of debt against "Lori Alexis Lynn Martinolich"; originally entered on August 16, 2018 against "Lori Lynn Garfinkel."

FMC answered the complaint and asserted several defenses including: "Plaintiff's judgment was not discoverable and was not discovered at the time

---

[4] According to FMC's case information statement, plaintiff's claims against debtor, Peter Garfinkel, the IRS, and Casha, Casha & Evans, LLC were dismissed without prejudice in the trial court for lack of prosecution. We glean from the transcript of oral argument before the motion judge that NJDOT did not file a brief but joined MFD's motion.

this [d]efendant accepted a mortgage with respect to the [West Orange property]."

In its answer, MFD joined plaintiff's application for a declaration of the priority of liens on the West Orange property. MFD asserted, however, "[its] judgment enjoys priority over other claims."

In his certification supporting his summary judgment motion, plaintiff annexed documents: provided by FMC, presumably in discovery; obtained from the New Jersey Courts website; and obtained from "[web]sites operated by the State of New Jersey." Plaintiff also included an excerpt of debtor's deposition taken in October 2018 regarding an unspecified lawsuit filed by her against plaintiff and other attorneys, and "a portion of [debtor's] 2008 tax return obtained and provided to opposing counsel in [his] representation of her."

Plaintiff asserted while processing debtor's mortgage application, FMC "obtained copies of [her] 2016 and 2017 tax returns." In her 2017 tax return, debtor claimed three dependent children, all with the last name, Garfinkel. However, FMC did not provide "any documentation" confirming debtor was questioned about "these dependents, that their last name was Garfinkel, or [whether she was] ever married to any person with the last name of Garfinkel." Further, the children were included in debtor's 2008 tax return.

6

Plaintiff also cited a "FraudGuard report,"[5] which indicated the address of the West Orange property was an "Invalid Address according to the USPS," and the telephone number provided by debtor was assigned to "Lori Lynn Lynn," residing at the West Orange property. Further, the credit report received by FMC revealed, "ADDRESS DISCREPANCY: THERE IS A SUBSTANTIAL DIFFERENCE BETWEEN THE ADDRESS SUBMITTED IN THE INQUIRY AND THE ADDRESS(ES) ON FILE."

Regarding debtor's social security number, the credit report indicated: "INPUT SSN LIKELY NOT ISSUED PRIOR TO JUNE 2011," and "INPUT SSN ISSUE DATE UNVERIFIED." Similarly, the FraudGuard report "show[ed] no date or state of issue for [debtor's] social security number." Plaintiff noted, however, a "photocopy of [debtor]'s social security number show[ed] a date of issue of March 14, 2016."

Although the FraudGuard report indicated "EMPLOYER INFO 'No match found,'" in her July 17, 2019 loan application, debtor claimed she was "employed

---

[5] According to its website, "the FraudGuard report helps lenders identify potential fraud risk and errors in mortgage applications, comply with regulations, improve the application review process through greater speed and efficiency, and increase loan quality." First American, FraudGuard, https://dna.firstam.com/solutions/mortgage-fraud/fraudguard (last visited June 27, 2024).

A-1179-22

by Peaceful Healing Inc. for 12 years." Debtor further asserted "there [we]re no outstanding judgments against her." In a July 8, 2019 letter to the mortgage broker, debtor "type[d] her name as Lori Lynn." In addition, the "marital history section of the affidavit of title" was left blank.

During oral argument before the motion judge, plaintiff cited these "red flags" raised in FMC's FraudGuard and credit reports to support his contention that FMC was required to pursue a more diligent inquiry of debtor's background under state and federal law, including the USA Patriot Act of 2001, Pub. L. No. 107-56, 115 Stat. 272. Plaintiff also asserted FMC was required to institute "anti-fraud policies" to ensure there were no existing judgments affecting the priority of its lien. MFD argued the law requires lenders to "conduct a reasonable and diligent search for any outstanding rights or claims," which FMC failed to do here.

FMC countered it had no obligation to "look beyond the public record" even assuming certain information "raise[d] red flags." FMC further asserted the discrepancies noted by plaintiff "d[id] not establish that there [wa]s a lien on the real property which [wa]s being mortgaged" and, as such, plaintiff's lien did "not attach" to the West Orange property.

A-1179-22

Following oral argument, the judge issued a written statement of reasons accompanying the three November 14, 2022 orders. Rejecting plaintiff's argument under the Patriot Act, the judge reasoned:

> The Patriot Act's purpose in requiring lenders to verify the identity of customers opening bank accounts is to prevent use of the U.S. financial system by enemies of the United States. The anti-money laundering statute's purpose is to prevent and detect suspicious financial activity relating to money[]laundering and terrorist financing, including predicate offenses such as securities fraud and market manipulation. Neither of these regulations is intended to protect judgment creditors from normal title searches of the public docket that do not reveal their prior liens because of name changes.

Citing our decision in Venetsky v. West Essex Building Supply Co., 28 N.J. Super. 178, 190 (App. Div. 1953), however, the judge was persuaded by FMC's argument "that constructive notice comes from the information entered onto the public docket, and what a search of the public record would reveal based on an applicant's name on the [a]ffidavit of [t]itle." The judge concluded "the case law holds true for any kind of name change, fraudulent or otherwise." In addition, the judge found MFD and plaintiff "were both in a position to amend their judgements, which would . . . have avoided any lack of constructive notice issue." Moreover, movants failed to "articulate[] a standard of diligent inquiry

9

to be followed if lenders are required to prove they adequately searched outside of the public record for names and addresses not found in the chain of title."

In the November 14, 2022 order granting FMC's motion, the judge declared the priority of liens as follows: (1) FMC, "by virtue of its mortgage recorded August 1, 2019"; (2) MFD, "by virtue of its judgment entered August 16, 2018, amended August 19, 2019, [and] entered against, 'Lori Lynn-Martinolich'"; and (3) the IRS "by virtue of its judgment filed September 19, 2019." The judge further determined: "The asserted interests of all other defendants and plaintiff do not attach to the [West Orange p]roperty." This appeal followed.

On appeal, plaintiff reprises two overlapping arguments. Plaintiff maintains FMC failed to comply with the Bank Secrecy Act, 31 U.S.C. 5311-5336, as amended by the Patriot Act, because FMC did not have policies and procedures in place to verify debtor's identity. Plaintiff further contends FMC failed to exercise due diligence in ascertaining debtor's true identity and, as such, FMC cannot rely on a title search of the public record. Although MFD did not file a cross-appeal, it joins plaintiff's second argument, urging us to reverse the court's orders.

FMC counters plaintiff lacks standing to enforce the Patriot Act and, pursuant to the Recording Act, N.J.S.A. 46:26A-1 to -12, FMC was not obligated "to look beyond the public record to determine" the existence of liens recorded "in a different name." During the course of briefing on appeal, we permitted the New Jersey Land Title Association (NJLTA) to appear as amicus curiae. NJLTA echoes FMC's arguments, supporting the court's orders.

## II.

We review the trial court's grant of summary judgment de novo. Conforti v. County of Ocean, 255 N.J. 142, 162 (2023). Employing the same standard as the trial court, we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to the non-moving party, nonetheless entitle the movant to judgment as a matter of law. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). We focus only on the motion record before the judge. See Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000). We owe no deference to the trial court's legal analysis or interpretation of a statute. Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

11

As a threshold matter, we agree with FMC and NJLTA that a private cause of action is not authorized under the Patriot Act. See e.g., Ray v. First Nat. Bank of Omaha, 413 F. App'x 427, 430 (3d. Cir. 2011) ("[C]ourts that have considered the question have concluded that the Patriot Act does not provide for a private right of action for its enforcement."). In our view, however, plaintiff does not assert a private cause of action under the Patriot Act. As he clarifies in his reply brief, plaintiff argues the Patriot Act's due diligence requirements should be incorporated into a state standard, requiring a lending institution to "ascertain[] the identity and background of a prospective mortgagor." As MFD asserts, the due diligence requirement finds support in established legal principles.

"A holder of a docketed judgment has a lien on all real property held by the judgment debtor in the state." New Brunswick Sav. Bank v. Markouski, 123 N.J. 402, 412 (1991) (citing N.J.S.A. 2A:16-1, 2A:17-17). The Recording Act provides, in pertinent part:

> a. [A]ny recorded document affecting the title to real property is, from the time of recording, notice to all subsequent purchasers, mortgagees[,] and judgment creditors of the execution of the document recorded and its contents.
>
> b. A claim under a recorded document affecting the title to real property shall not be subject to the effect of a document that was later recorded or was not recorded

12

> unless the claimant was on notice of the later recorded or unrecorded document.
>
> [N.J.S.A. 46:26A-12(a), (b).]

Therefore, "New Jersey is considered a 'race-notice' jurisdiction, which means that as between two competing parties the interest of the party who first records the instrument will prevail so long as that party had no actual knowledge of the other party's previously-acquired interest." Cox v. RKA Corp., 164 N.J. 487, 496 (2000). However, "[i]n the context of the race[-]notice statute, constructive notice arises from the obligation of a claimant of a property interest to make reasonable and diligent inquiry as to existing claims or rights in and to real estate." Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 108 (App. Div. 1990) (citing Scult v. Bergen Valley Builders, Inc., 76 N.J. Super. 124, 135 (Ch. Div. 1962), aff'd 82 N.J. Super. 378 (App. Div. 1964)).

A "claimant will be charged with knowledge of whatever such an inquiry would uncover where facts are brought to his [or her] attention, 'sufficient to apprise him [or her] of the existence of an outstanding title or claim, or the surrounding circumstances are suspicious and the party purposefully or knowingly avoids further inquiry.'" Ibid. (emphasis altered) (citing Scult, 76 N.J. Super. at 135); see also Howard v. Diolosa, 241 N.J. Super. 222, 232 (App. Div. 1990) ("If a purchaser or lienor is faced with extraordinary, suspicious, and

unusual facts which should prompt an inquiry, it is equivalent to notice of the fact in question."). Accordingly, "a party may be charged with inquiry notice where there are facts or circumstances indicating some outside claim that would prompt a reasonable purchaser to investigate further." Pearson v. DMH 2 LLC, 449 N.J. Super. 30, 50 (Ch. Div. 2016). Because the doctrine of inquiry notice is an exception to a system of recorded notice, it is reserved for cases of "unusual equity." See Friendship Manor, 244 N.J. Super. at 113 ("We have been cautioned that 'absent any unusual equity' the stability of titles and conveyancing requires the judiciary to follow that course 'that will best support and maintain the integrity of the recording system.'") (quoting Palamarg Realty Co. v. Rehac, 80 N.J. 446, 453 (1979)).

"The underlying purpose of the Recording Act is clear." Palamarg Realty, 80 N.J. at 453. The act "was designed to compel the recording of instruments affecting title, for the ultimate purpose of permitting purchasers to rely upon the record title and to purchase and hold title to lands within this state with confidence." Ibid. (emphasis added) (quoting Donald B. Jones, The New Jersey Recording Act – A Study of its Policy, 12 Rutgers L. Rev. 328, 329-30 (1957)).

Guided by these well-settled principles – and notwithstanding the parties filed cross-motions seeking a legal determination – based on our de novo review

14

of the record, we are convinced there existed material questions of fact that precluded judgment as a matter of law and required a plenary hearing. <u>See Palmieri v. Palmieri</u>, 388 N.J. Super. 562, 564 (App. Div. 2006) ("When a genuine issue of material fact exists, a plenary hearing is required."). Indeed, multiple "red flags" were raised during FMC's processing of debtor's application, including: debtor's use of various names; her unverifiable social security numbers; her three children shared the same surname, which differed from hers; and discrepancies in debtor's address and employment information.

Although these circumstances seem suspicious and may have apprised FMC of the previously-filed judgments in debtor's former name, the record does not disclose how, if at all, FMC addressed the flags raised during debtor's application process. <u>See</u> <u>Friendship Manor</u>, 244 N.J. Super. at 108. Granting judgment as a matter of law, on the record presented here, permitted FMC to benefit from its alleged failure to undertake a diligent inquiry as to the previously filed judgments in debtor's former name. However, additional information is necessary to determine whether FMC "purposefully or knowingly avoid[ed] further inquiry." <u>Ibid.</u>

A-1179-22

We therefore vacate the orders under review and remand for a plenary hearing, deferring to the motion judge's discretion whether to reopen and permit limited discovery. Jurisdiction is not retained.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16