FREDERICK HEYDER et al., appellants,

*v.*

THE EXCELSIOR BUILDING LOAN ASSOCIATION, NO. 2, OF THE CITY OF NEWARK, respondents.

1. The lien of a mortgage duly registered will not be lost by a cancellation of record effected through accident, or the mistake or fraud of third persons.

2. If cancellation be the result of the negligence of the owner, he will not be permitted to establish his lien against subsequent *bona fide* purchasers or mortgagees acting upon the faith of such cancellation of record.

3. Permitting the custody of a mortgage to be in the mortgagor, held to be proof of negligence in the mortgagee, such as precludes restoration of the mortgage canceled through fraud of the mortgagor, against a subsequent purchaser in good faith and without notice.

On appeal from a decree advised by Washington B. Williams, advisory master, who filed the following conclusions :

This case differs from *Harrison* v. *N. J. R. R. Co.*, *4 C. E. Gr. 488*, because there the defence did not rest on the ground "that the mortgage in dispute was marked satisfied upon the county register, and that the defendants took their title in reliance upon that fact." Here the defence rests expressly on that ground.

So, in that case, after the mortgage was lodged by the mortgagee with the county clerk, it was withdrawn from that custody by the mortgagor ; and the burthen of showing that the mortgagor was authorized to have it in his possession, was held to rest on the defendants.

In this case the mortgage came duly to the mortgagee after being recorded, and its production by the mortgagor after its cancellation had been entered of record appeared proper and usual.

So, in that case, the non-production of the bond was held an important factor in resolving the question whether the defendants had been negligent. Here it is testified that the bond was produced, and this is not disproved.

True, complainants' officers say that so far as they know and believe, the bond was never out of their custody ; but so they thought about the mortgage, which yet had certainly left their custody.

The defendant relied on the official entry of cancellation, which is said in *Miller* v. *Wack*, *Sax. 204*, to be evidence " of a high character," and see also the remarks of the chief-justice in *4 C. E. Gr. 499.*

Such an entry throws the burthen of proof on the party attacking its truth ; but that is all. The entry is not conclusive, and may be impeached as false. If the party who attacks it shows its falsity, and that he is in no way privy to it, or estopped by his own acts or negligence, it has been held in this court that his mortgage will be enforced even against an innocent purchaser for value. *Harris* v. *Cook*, *1 Stew. Eq. 345.*

The complainants have fully met this requirement, and have

sustained this burthen of proof. They have proved that their mortgage was never paid, but was surreptitiously obtained by Johnson, by some unknown means, from the place where their securities were kept, without their assent or knowledge.

It was, in fact, stolen by him. If a receipt was written on it, as the words of the record of cancellation indicate, it was either a forgery, or, if signed by Johnson only, was without authority. The officers of the association neither signed it nor authorized it, nor knew of it, nor did they place the mortgage in such a position that it was likely to be tampered with. They seem to have been as careful as people usually are to keep such papers in safety.

The following quotations from *Harris* v. *Cook* express the position of the complainants in the present case :

" The complainants were not aware that their mortgage had been canceled of record until after the purchase by Cook and Bernheimer had been completed."

" It has never been paid or satisfied, and its cancellation of record was entirely without their knowledge, and was not due to any negligence on their part, nor is any laches imputable to them."

" The action of the clerk in canceling the mortgage of record was without warrant or authority, and was therefore of no effect. His false certificate, while it misled those who examined the record in respect to the property, did not satisfy or extinguish the mortgage, nor in any wise affect its validity, and it cannot affect the rights of the lawful owners of the mortgage. *Trenton Banking Co.* v. *Woodruff, 1 Gr. Ch. 117.*"

" Those who take title to property on which a mortgage has been given and of which they have notice, may effectually guard themselves against being misled by such certificate, if false, by requiring proof that the mortgage has in fact been satisfied or extinguished. Cautiousness will protect them. But what vigilance, short of constant watch, would protect the mortgagee against the making of the false certificate of cancellation, if he were to be held to be bound by it."

Where the cancellation is unauthorized, nothing but an estoppel will prevent the holder from enforcing the mortgage.

But to estop, the party must be affected with knowledge of the facts; or, at least, with implied knowledge that what he is doing or neglecting will probably result in injury to another who may act in reliance on it.

Here there was no knowledge, or omission of duty towards the purchaser. The complainants took at least ordinary care of their property, and it was, in effect, stolen by Johnson, and disposed of by him; this would not give title to an innocent purchaser. Even some want of care on their part would not have raised an estoppel under the circumstances.

" It is certainly not a general rule of law that a person can be deprived of his property by an unauthorized transfer thereof, simply because he has not exercised ordinary care to prevent such transfer."

" I may place my unendorsed bill in the hands of an agent, and thus place it in his power to forge an endorsement, and yet the endorsement would not bind me. The principle that when one of two persons equally innocent must suffer a loss by the act of a third person, he shall bear the loss who placed it in the power of such third person to perpetrate the act, does not apply to such cases."

" The negligence alleged is simply that Raines did not use ordinary care to discover and prevent the frauds of Phelps; and there is no authority for holding that such negligence can work an estoppel. If it could, merchants, bankers, and other business men having numerous clerks, would frequently hold their property by a precarious tenure." *People* v. *Bank of North America,. 75 N. Y. 547–562.*

To relieve the defendant in this case, it would be necessary to hold, in effect, that theft or forgery will confer good title on an innocent purchaser as against the true and innocent owner.

The fact that Johnson was the general solicitor of the complainant, was not a matter to disarm the vigilance of the defendants in regard to the question whether their mortgage was paid. It was not natural to suppose he was authorized, as solicitor, to

receipt to himself his own debt or mortgage. This should rather have awakened inquiry. The complainants are entitled to a decree.

*Mr. C. T. Glen,* for appellants.

*Messrs. Guild & Lum,* for respondents.

The opinion of the court was delivered by

KNAPP, J.

The learned master who decided this cause reached the conclusion on the evidence that the purchaser of the premises, and not the mortgagee, should bear the loss incident to the fraudulent cancellation of the mortgage made upon the record prior to the purchase, on the faith of which cancellation the buyer parted with the whole purchase-money, believing the property to be unencumbered. After a careful review of the case, I am led to an opposite result. I am fully impressed with the importance of securing due protection to the holders of mortgage securities, where, in pursuit of the provisions of the registry laws, the lien has been made apparent on the record. The security afforded by registry should remain undisturbed by a cancellation effected through mistake, accident or fraud of third persons; even if, by such cancellation, subsequent mortgagees or purchasers are made to suffer loss. Such after-acquired rights ought not to prevail against the just claims of an innocent, non-negligent encumbrancer, because the record has been wrongly effaced.

Cancellation of a mortgage on the record is only *prima facie* evidence of its discharge, and it is left to the owner making the allegation to prove the canceling to have been done by fraud, accident or mistake. Such proof being made, the mortgage will be established, even against subsequent purchasers or mortgagees without notice. *Trenton Banking Co.* v. *Woodruff, 1 Gr. Ch. 117; Harrison* v. *N. J. R. R. Co., 4 C. E. Gr. 488.*

Between a mortgagee, whose mortgage has been discharged of record, solely through the unauthorized act of another party,

and a purchaser who buys the title in the belief, induced by such cancellation, that the mortgage is satisfied and discharged, the equities are balanced, and the rights, in the order of time, must prevail. The lien of the mortgage must remain, despite the apparent discharge.

But this is apart from any default attributable to the holder of the lien. If, through his negligence, the record is permitted to give notice to the world that his claim is satisfied, he cannot, in the face of his own carelessness, have his mortgage enforced against a *bona fide* purchaser, taking his title on the faith that the registry is discharged.

. Where one gives to another the power to practice a fraud upon innocent parties, the court will not interfere in his protection at the expense of those who have been deceived and misled by such fraud. What circumstances shall be sufficient to establish negligence, such as shall preclude a mortgagee from a decree establishing his canceled paper, must be determined as a question of fact in each particular case, tested by those rules of conduct which men of common prudence usually observe in the care and management of such securities.

That it is negligence in the owner of a mortgage to permit it to be in the custody and control of the mortgagor or owner of the mortgaged premises, in view of the provisions of our statute of registry, will not admit of denial. Such an occurrence is so unusual, so imperils the owner, and is therefore so unlikely to happen in business dealing, that it was regarded, in *Harrison* v. *New Jersey R. R. Co.*, as ground for the gravest suspicion of the truthfulness of a witness who had testified to such custody by the assent of the owner of the security.

The minute of discharge of this mortgage, made upon the record by the register, expressed in general form the fact of cancellation. The entry was made upon evidence presented to the register, such as the statute has declared to be his sufficient authority for so doing. The mortgage was produced by the mortgagor, canceled, and there is no doubt that upon the faith of this cancellation, the purchaser took title to the property and paid the consideration. But it clearly appears that the mort-

gage was unpaid, and that the act of the mortgagor in procuring
the entry of its discharge was fraudulent and without the knowl-
edge or assent of the mortgagee.   If this were all of the case,
and no default appeared on the part of the mortgagee, notwith-
standing the forcible language of the act which declares such
minute to be a full and absolute bar to and discharge of the said
entry, registry and mortgage, the right of the respondent to the
lien of its security should be maintained, and it is solely upon
the grounds that the respondent is chargeable with negligence
which tended to and actually did produce the injury, that I think
the decree should be reversed.   The mortgage was in the posses-
sion and under the control of the mortgagor at the time when
it was produced for cancellation on the record.   How long he
had such custody does not positively appear, but the strong
inference from the testimony is that it was during the whole
time between the registry of the mortgage and its cancellation.
Neither the president of the association nor its treasurer, who
had charge of its securities, were able to say that they ever had
the actual custody of this mortgage; and they further declare
that the mortgagor, although an officer of the company, had no
access whatever to the securities in the possession of the treas-
urer.   It is, therefore, impossible that he should have obtained
its possession by means resembling theft.   His possession must,
I think, be attributed either to the assent or to the negligence of
the officers of the association responsible for its securities.   If we
regard the theory that the mortgagor, at the conclusion of his trans-
action for the loan, fraudulently substituted a copy of the mortgage
for the original paper, and delivered that to the association, I am
still forced to the conclusion that the officers were culpably negli-
gent in permitting themselves to be thus imposed upon.   The
fact that he was the law officer of this body would not justify
so implicit a trust in him in the matter of a loan to himself.  We
must assume that these officers were men of business capacity and
skill.   The transaction was in the line of their ordinary duties.
Indeed, they did not trust to him, but employed other counsel to
make searches against his property.   In their ordinary transac-
tions their habit was to submit to counsel the securities received

Heyder *v.* Excelsior Building Loan Association.

for loans for inspection and approval. The slightest examination of the paper received by them would have shown it to be but a copy. They submitted it to no legal adviser, they gave it no examination. If it were not intended to be, as was its purport, a mere copy, leaving the original in other hands, any degree of care exceeding the blindest confidence must have revealed the deception. The theory fails to lead us out of the difficulty. I do not think that any circumstance presented in this case made it the appellant's duty, in order to avail himself of the rights of a *bona fide* purchaser, to institute personal inquiry of the mortgagee. Any rule placing him under this exaction would embrace every case of a purchase of lands that had ever been subject to mortgage, which the record showed to be canceled. Such a rule, it is needless to say, would render this provision of the registry act entirely nugatory. A purchaser could then only buy with safety when the registry had been discharged, and an admission of payment obtained from the mortgagee. Doubtless, circumstances may, and frequently do, arise to put the purchaser upon inquiry and charge him with notice. It seems to me that nothing appears in this transaction which should have put this purchaser upon further inquiry. He was permitted to rely upon the record. ' He did so, purchasing upon the belief that it spoke the fact truly. It was false, but the deception was directly traceable to the culpable negligence of the mortgage owner, and the loss should fall upon the party chargeable with the fault.

The decree below should be reversed, and the bill of complainants be dismissed.

*Decree unanimously reversed.*