**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1706-16T4

U.S. BANK NATIONAL ASSOCIATION
as Trustee for GSR 2006-6F,

    Plaintiff-Appellant,

v.

GERALDINE WISHNIA, BRUCE WISHNIA,
a/k/a BRUCE J. WISHNIA, 148
PLEASANTVILLE ROAD LLC, PARADIGM
CREDIT CORP, SEDONA CAPITAL, LTD.,
and T. GARY GUTJAHR,

    Defendants-Respondents,

and

MORTGAGE ELECTRONIC REGISTRATION
SYSTEM INC. ("MERS") AS NOMINEE
FOR COUNTRYWIDE BANK, N.A., and
STATE OF NEW JERSEY,

    Defendants.

_____

        Argued May 17, 2018 — Decided September 7, 2018

        Before Judges Simonelli, Haas and Gooden
        Brown.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Morris County, Docket No.
        F-047973-10.

David F. Pustilnik (Winston & Strawn, LLP) of the Illinois State bar, admitted pro hac vice, argued the cause for appellant (Winston & Strawn, LLP, attorneys; Heather E. Saydah on the briefs).

Jaimee L. Katz Sussner argued the cause for respondents Paradigm Credit Corp. and Sedona Capital Ltd. (Sills Cummis & Gross, PC, attorneys; Jaimee L. Katz Sussner and Michael S. Carucci, on the brief).

Carey A. Aquilina argued the cause for respondents Geraldine Wishnia, Bruce J. Wishnia and 148 Pleasantville Road, LLC (Eugene P. Brinn, attorney, joins in the brief of respondents Paradigm Credit Corp. and Sedona Capital Ltd.).

Edward Rogan & Associates, LLC, attorneys for respondent T. Gary Gutjahr (Edward T. Rogan, of counsel; Celia S. Bosco, on the brief).

PER CURIAM

Plaintiff U.S. Bank National Association appeals from the September 16, 2016 Chancery Division order granting summary judgment to defendants Paradigm Credit Corp. and Sedona Capital, LTD. (collectively, the Paradigm defendants), and dismissing its foreclosure complaint with prejudice. Plaintiff also appeals from the December 2, 2016 order denying their motion for reconsideration. We affirm.

We derive the following facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment

motion, viewed in the light most favorable to plaintiff.  <u>Brill</u> <u>v. Guardian Life Ins. Co.</u>, 142 N.J. 520, 523 (1995).

On March 29, 2006, Bruce and Geraldine Wishnia executed a promissory note to Countrywide Bank, N.A., for the sum of $2 million.  To secure the note, the Wishnias executed a mortgage (the first mortgage) on the same date in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Countrywide, encumbering property located on Pleasantville Road in Harding, New Jersey.  The first mortgage was recorded on April 18, 2006 in the Morris County Clerk's Office in mortgage book 20479, page 134.

On May 1, 2006, the Wishnias executed a second promissory note to Countrywide for the sum of $1 million.  To secure that note, the Wishnias executed a mortgage (the second mortgage) on the same date in favor of MERS as nominee for Countrywide, encumbering the same property.  On May 11, 2006, the second mortgage was recorded in the Morris County Clerk's Office in mortgage book 20507, page 1574.

On February 5, 2007, the Wishnias executed a third promissory note to Countrywide for the sum of $1.5 million.  To secure the note, the Wishnias executed a mortgage (the third mortgage) on the same date in favor of MERS as nominee for Countrywide, encumbering the same property.  On February 21, 2007, the third mortgage was

recorded in the Morris County Clerk's Office in mortgage book 20749, page 0508.

On March 15, 2007, MERS executed a Discharge of Mortgage, which was recorded on April 3, 2007, that "canceled and void[ed]" "[a] certain mortgage dated [May 1, 2006]" "to secure payment of [$2 million dollars]" and "recorded . . . in mortgage book . . . 20479 on page 134."  Although the discharge referenced the date of the second mortgage, it identified the amount and recording information of the first mortgage.  As a result, the first mortgage was cancelled.

On March 14, 2013, MERS executed a second Discharge of Mortgage, cancelling the third mortgage.  The discharge acknowledged receipt of "full payment and satisfaction of the same," and was recorded on March 26, 2013, in mortgage book 22285, page 0470.  On January 9, 2014, MERS executed a third Discharge of Mortgage, cancelling the second mortgage.  The discharge acknowledged that "the [m]ortgage has been [paid in full] or otherwise [satisfied]" and was recorded on January 10, 2014 in mortgage book 22481, page 1328.

On September 21, 2010, intending to assign the first mortgage that had been discharged on March 15, 2007, MERS assigned to plaintiff the mortgage recorded on May 11, 2006, in mortgage book 20507, page 1574, in the amount of $1 million dollars, which

4

information corresponded with the second mortgage. The assignment was recorded on January 26, 2011. At that time, the second mortgage had not yet been discharged.

After the assignment, on September 30, 2010, plaintiff filed a foreclosure complaint, and on November 8, 2010, recorded a lis pendens in the county clerk's office in Book 21660, page 716, due to the Wishnia's failure to make payments on the first mortgage on April 1, 2010 and thereafter. The foreclosure complaint listed the date and amount of the first mortgage, but the recording information of the second mortgage. The corresponding lis pendens listed the date and recording information of the second mortgage and had no indicators of the first mortgage.

Attached to the foreclosure complaint was a certification of counsel, certifying that a title search of the public records was made for the purpose of identifying any lien holders or interested persons or entities with an interest in the property. However, the foreclosure complaint did not plead or otherwise disclose that the first mortgage had, in fact, been discharged on March 15, 2007. On December 20, 2013, the foreclosure complaint was dismissed without prejudice for lack of prosecution.

After all three mortgages were discharged, the Wishnias conveyed title to their property, by deed dated July 30, 2014 and recorded on September 8, 2014, to their wholly owned entity, 148

Pleasantville Road LLC (148 Pleasantville).  On that same date, 148 Pleasantville executed two promissory notes totaling $1.8 million in favor of the Paradigm defendants, secured by a first priority mortgage in the amount of $1.8 million (the Paradigm mortgage) encumbering the same property.  The Paradigm mortgage was recorded on September 8, 2014.

On July 7, 2015, plaintiff moved to reinstate the foreclosure complaint.  In a November 9, 2015 order, the motion judge granted plaintiff's motion, in part, allowing plaintiff to reinstate the foreclosure action and "correct the recording information for the [m]ortgage" contained in the complaint and the lis pendens, nunc pro tunc.  However, the judge denied plaintiff's requests to vacate the discharge of the first mortgage, reinstate the first mortgage, reform the lis pendens and reform the assignment of the first mortgage.

Nevertheless, on November 23, 2015, plaintiff's counsel sent a letter to the judge requesting an amended order to clarify the November 9, 2015 order.  The amended order that was submitted to and signed by the judge on November 25, 2015, permitted plaintiff to "memorialize the reformation of the [l]is [p]endens recorded on November 8, 2010 . . . and the reformation of the Assignment of Mortgage recorded on January 26, 2011[,]" in direct contravention of the November 9, 2015 order.

Upon discovering the discrepancy, the Wishnias moved to vacate the amended order. In defense of his actions, plaintiff's counsel certified that it was not his "intention" to "mislead" the court by altering the relief that was granted but rather "a mistake or . . . simply working too fast." On August 15, 2016, the judge entered an order vacating the November 25, 2015 order and reinstating the November 9, 2015 order. Additionally, the judge ordered the Morris County Clerk to discharge the November 25, 2015 order from the "mortgage book . . . and to expunge and remove same from the public record . . . ."

On June 7, 2016, plaintiff filed an amended foreclosure complaint seeking, among other things, an order declaring the discharge of the first mortgage null and void, reinstating the first mortgage, and granting the first mortgage lien priority as of the original recording date of April 18, 2006, over all subsequent creditors, including the Paradigm defendants. On August 22, 2016, plaintiff filed a "[s]pecial [l]is [p]endens" to provide notice of its efforts to foreclose on the first mortgage, despite the court's order to the contrary.

On August 2, 2016, the Paradigm defendants moved to dismiss plaintiff's amended complaint, or, in the alternative, for summary judgment. In a supporting certification, the managing member of the Paradigm defendants certified that prior to closing, the

Paradigm defendants ordered a title commitment and title search of the property, which was performed by First American Title Insurance Company (First American). According to the certification, the search did not "disclose the existence of any mortgages, lis pendens, or other interests held by or on behalf of [p]laintiff . . . ." Thus, the Paradigm defendants had no "notice or knowledge that [p]laintiff may have a mortgage, lien or any other interest in the [p]roperty until long after they advanced and closed the Paradigm loan, and after [p]laintiff filed its motion to re-open this action . . . ."

On September 16, 2016, following oral argument, Judge Stephan C. Hansbury issued an oral decision, granting summary judgment to the Paradigm defendants and dismissing the foreclosure complaint with prejudice. Judge Hansbury determined that the Paradigm defendants "w[ere] entitled to rely upon the title search and they did so." The judge explained that he had "read through the title search very carefully[,]" and "[t]here [was] not one, single thing in that title search that would put [the Paradigm defendants] on notice that there w[ere] subsequent loans . . . ." Therefore, according to the judge, the Paradigm defendants had "every right to rely upon [the title search] in issuing a substantial mortgage" as there was "absolutely no notice."

Judge Hansbury also determined that "[t]his [was] one of those cases where laches, estoppel, and unclean hands" prohibited "plaintiff from proceeding further in a mortgage proceeding." The judge pointed out that once plaintiff discovered there was no mortgage, "which it had to, pretty quickly," rather than moving "to reinstate the mortgage[,]" plaintiff "did nothing for five years and then tried to mislead the [c]ourt." Judge Hansbury explained that plaintiff "had no business filing" the foreclosure complaint because "there was no recorded mortgage." Acknowledging responsibility for not reading the order more "carefully" before signing it, the judge found it "completely outrageous" that plaintiff would submit an amended order granting it something "[it] didn't earn."

The judge also rejected plaintiff's request for additional discovery, noting that plaintiff's assertion that it "might come up with something" during discovery was mere "speculation[.]" Judge Hansbury concluded that despite the "unavoidable" and undeserved benefit to the Wishnias, "plaintiff's conduct justifie[d] saying, you lost your opportunity, through your inattention and you're, therefore, barred from proceeding against this property, now and forevermore, laches, estoppel, unclean hands, period, end of story." The judge entered a memorializing order on the same date.

A-1706-16T4

On September 28, 2016, plaintiff moved for reconsideration of the summary judgment order pursuant to Rule 4:49-2 and an order to show cause to stay the dissolution of its lis pendens pending the disposition of its motion. On December 2, 2016, Judge Robert J. Brennan entered an order denying plaintiff's motion for reconsideration and granting the Paradigm defendants' cross-motion to discharge and cancel plaintiff's special lis pendens. In his statement of reasons, Judge Brennan determined that plaintiff did not meet "the standard set forth in D'Atria v. D'Atria."[1] Like Judge Hansbury, Judge Brennan rejected plaintiff's argument "that further discovery may show that [the Paradigm defendants] had 'inquiry notice' or 'constructive notice,'" and reiterated that the Paradigm defendants were "entitled to rely on the clear title search" and were entitled to "bona fide purchasers status[.]" Judge Brennan agreed "that there was not one item on the title search that would put [the] Paradigm [defendants] on notice of any issues with the title."

In rejecting plaintiff's assertion that his attorney's "improper conduct" may have impacted the decision, Judge Brennan explained that

> [t]he decision was based on the law of priorities. Mortgage priorities are []generally governed in New Jersey by our

---

[1] 242 N.J. Super. 392 (Ch. Div. 1990).

> recording statutes. [N.J.S.A.] 46:26A-1 to -12. New Jersey is a "race-notice" jurisdiction, meaning that when two parties are competing for priority over each other's mortgage, the party that recorded its mortgage first will normally prevail, so long as that party did not have actual knowledge of the other party's previously-acquired interest. <u>Sovereign Bank v. Gillis</u>, 432 N.J. Super. 36, 43 (App. Div. 2013). Further, "lenders and other parties are generally charged with constructive notice of instruments that are properly recorded." [<u>Ibid.</u>]
>
> Here, Paradigm . . . was a bona [fide] purchaser lender who had no notice of the plaintiff's mortgage. Paradigm did not have actual notice of plaintiff's discharged mortgage, and the mortgage was discharged, so Paradigm did not have constructive notice. Plaintiff's loan had been discharged in 2007, and it was not until 2015 that plaintiff sought to remedy the fatal discharge. As a result, . . . plaintiff was barred by laches and estoppel to have their mortgage reinstated with priority over Paradigm.

This appeal followed.

On appeal, plaintiff argues the court erred in granting the Paradigm defendants summary judgment and denying its motion for reconsideration. We disagree.

We review a grant of summary judgment applying the same standard used by the trial court. <u>Steinberg v. Sahara Sam's Oasis, LLC</u>, 226 N.J. 344, 366 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving

party, would require submission of the issue to the trier of fact," then the trial court must deny the motion." On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.

[Ibid. (quoting R. 4:46-2(c)).]

In order to defeat summary judgment, a party must present "competent evidential material" beyond mere "speculation" and "fanciful arguments[.]" Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005). When incomplete discovery "is raised as a defense to a motion for summary judgment, that party must establish that there is a likelihood that further discovery would supply the necessary information." J. Josephson, Inc. v. Crum & Forster Ins. Co., 293 N.J. Super. 170, 204 (App. Div. 1996). Normally, "summary judgment should not be granted when discovery is incomplete." Oslacky v. Borough of River Edge, 319 N.J. Super. 79, 87 (App. Div. 1999). However, if "summary judgment turns on a question of law, or if further factual development is unnecessary in light of the issues presented, then summary judgment need not be delayed." United Sav. Bank v. State, 360 N.J. Super. 520, 525 (2003).

Further, we have determined that reconsideration

is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion, but should be

12

utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.

[Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (citation omitted).]

We will not disturb a trial judge's denial of a motion for reconsideration absent a clear abuse of discretion. Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). An "abuse of discretion only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Applying these standards, like Judges Hansbury and Brennan, we reject plaintiff's arguments and affirm substantially for the reasons expressed in Judge Hansbury's oral opinion and Judge Brennan's written statement of reasons. We add the following comments.

"Generally speaking, and absent any unusual equity, a court should decide a question of title . . . in the way that will best support and maintain the integrity of the recording system." Palamarg Realty Co. v. Rehac, 80 N.J. 446, 453 (1979). The underlying purpose of the New Jersey Recording Act (Recording Act) is "to compel the recording of instruments affecting title, for the ultimate purpose of permitting purchasers to rely upon the record title and to purchase and hold title . . . with confidence." Ibid. (quoting Donald B. Jones, The New Jersey Recording Act -- A Study of its Policy, 12 Rutgers L. Rev. 328, 329-30 (1957)).

The Recording Act provides, in pertinent part, that "[a]ny recorded document affecting the title to real property is . . . notice to all subsequent . . . mortgagees . . . of the execution of the document recorded and its contents." N.J.S.A. 46:26A-12(a). A mortgage "shall be of no effect against subsequent . . . bona fide purchasers and mortgagees for valuable consideration without notice and whose conveyance or mortgage is recorded, unless that conveyance is evidenced by a document that is first recorded." N.J.S.A. 46:26A-12(c).

"By those enactments, New Jersey is considered a 'race-notice' jurisdiction, which means that as between two competing parties the interest of the party who first records the instrument will prevail so long as that party had no actual knowledge of the

other party's previously-acquired interest." Cox v. RKA Corp., 164 N.J. 487, 496 (2000). It is the duty of the mortgagee to "see to it that his instrument is properly recorded . . . ." Sec. Pac. Fin. Corp. v. Taylor, 193 N.J. Super. 434, 444 (Ch. Div. 1984).

"As a corollary to that rule, parties are generally charged with constructive notice of instruments that are properly recorded." Cox, 164 N.J. at 496. "In the context of the race notice statute, constructive notice arises from the obligation of a claimant of a property interest to make reasonable and diligent inquiry as to existing claims or rights in and to real estate." Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 108 (App. Div. 1990). However, a subsequent mortgagee "will be bound only by those instruments which can be discovered by a 'reasonable' search of the particular chain of title." Palamarg, 80 N.J. at 456.

N.J.S.A. 17:46B-9 provides, in pertinent part, that "[n]o policy or contract of title insurance shall be written unless and until the title insurance company has . . . conducted a reasonable examination of the title . . . ." In Sonderman v. Remington Constr. Co., Inc., 127 N.J. 96 (1992), our Supreme Court affirmed its "commitment to the proposition that 'a purchaser should be charged only with such notice from the records as can be ascertained by a reasonable search of those records . . . .'" Id.

at 109 (quoting Jones, 12 <u>Rutgers L. Rev.</u> at 335).  To require "a purchaser . . . to search not only the book of deeds . . . but also all dockets and records for liens on real estate" is "at odds with current searching practice[,]" and the Court "perceive[d] no reason to impose a greater responsibility on title searchers than is imposed by standard practice."  <u>Id.</u> at 110.

Thus, "[a] purchaser or mortgagee for value without notice, actual or constructive, acquires a title or lien interest free from all latent equities existing in favor of third persons.  <u>Howard v. Diolosa</u>, 241 N.J. Super 222, 232 (App. Div. 1990).  However, "[i]f a purchaser or lienor is faced with extraordinary, suspicious, and unusual facts which should prompt an inquiry, it is equivalent to notice of the fact in question."  <u>Ibid.</u>

Here, there is no question that the Paradigm defendants constitute bona fide purchasers for value.  The title search conducted by First American clearly revealed that the subject property had no existing liens, lis pendens, or foreclosure complaints and constituted a "reasonable search" under the guidance of <u>Palamarg</u>.  In fact, when the title search was conducted, all three mortgages had been discharged, the discharges had been duly recorded, and the foreclosure complaint had been dismissed for lack of prosecution.  The Paradigm defendants would not have been aware of any interest plaintiff claims to have had

in the property and were justifiably permitted to rely upon the title search inasmuch as there were no extraordinary, suspicious, or unusual facts to prompt any further inquiry. Rather, there were three prior mortgages with three recorded discharges cancelling all three mortgages.

Plaintiff contends that because they were not the negligent party and did not mistakenly discharge the first mortgage, their mortgage should still receive priority over the Paradigm mortgage. In Heyder v. Excelsior Bldg. Loan Ass'n, 42 N.J. Eq. 403 (E. & A. 1886), the court held that "[c]ancellation of a mortgage on the record is only prima facie evidence of its discharge, and it is left to the owner making the allegation to prove the canceling to have been done by fraud, accident or mistake." Id. at 407. "Such proof being made, the mortgage will be established, even against subsequent purchasers or mortgagees without notice." Ibid.

Thus,

> [b]etween a mortgagee, whose mortgage has been discharged of record, solely through the unauthorized act of another party, and a purchaser who buys the title in the belief, induced by such cancellation, that the mortgage is satisfied and discharged, the equities are balanced, and the rights, in the order of time, must prevail. The lien of the mortgage must remain, despite the apparent discharge.
>
> [Id. at 407-08.]

However, "[i]f, through his negligence, the record is permitted to give notice to the world that his claim is satisfied, he cannot, in the face of his own carelessness, have his mortgage enforced against a bona fide purchaser, taking his title on the faith that the registry is discharged." Id. at 408.

Here, plaintiff cannot hide behind the mistakes of others while it sat idly by and did nothing for almost five years before attempting to rectify the error, and was, in fact, complicit in perpetuating the error. The assignment to plaintiff of what was purportedly the first mortgage, but was instead the second mortgage, occurred on September 21, 2010, and went undetected by plaintiff. Plaintiff then filed a foreclosure complaint on September 30, 2010, and recorded a lis pendens on November 8, 2010, both containing fatal errors, after plaintiff's attorney certified that a title search was conducted. It was not until almost five years later and one year after the Paradigm defendants issued a mortgage on the property that plaintiff finally attempted to rectify the error.

Moreover, the equitable doctrine of laches bars a party from bringing a claim when, like plaintiff, it engages in "an 'unexplainable and inexcusable delay' in exercising a right, which results in prejudice to another party." Fox v. Millman, 210 N.J.

401, 417 (2012) (quoting Cty. of Morris v. Fauver, 153 N.J. 80, 105 (1998)). Unlike the periods prescribed in a statute of limitations, the time constraints for laches are characteristically flexible, not fixed. Lavin v. Bd. of Educ. of Hackensack, 90 N.J. 145, 151 (1982). However, although the purpose of applying the doctrine of "laches is to discourage stale claims[,]" Fauver, 153 N.J. at 105, "[t]he application of laches . . . requires more than 'mere' passage of time." Chance v. McCann, 405 N.J. Super. 547, 568 (App. Div. 2009).

Nonetheless, "[l]aches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." Knorr v. Smeal, 178 N.J. 169, 181 (2003). The key factors we consider to determine whether to apply laches are "the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" Ibid. (quoting Lavin, 90 N.J. at 152). To be sure, "[t]he core equitable concern in applying laches is whether a party has been harmed by the delay." Ibid. To that end, whether laches applies depends on "the facts of the particular case and is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004)

A-1706-16T4

(quoting Garrett v. Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir. 1988)).

Similarly, "[t]he essential principle of the policy of estoppel . . . is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." Middletown Twp. Policeman's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367 (2000) (quoting Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-04 (1955)). Equitable estoppel "is designed to ensure that the loss is borne by the party who 'made the injury possible or could have prevented it.'" First Union Nat'l Bank v. Nelkin, 354 N.J. Super. 557, 568 (App. Div. 2002) (quoting Foley Mach. Co. v. Amland Contractors, Inc., 209 N.J. Super. 70, 75 (App. Div. 1986)). Equitable estoppel does not require evidence of fraudulent intent; rather the doctrine applies if the conduct "works an unjust or inequitable result to the person it was designed to influence[.]" Hendry v. Hendry, 339 N.J. Super. 326, 336 (App. Div. 2001) (quoting Chrisomalis v. Chrisomalis, 260 N.J. Super. 50, 55 (App. Div. 1992)) .

Thus, "as between two innocent parties[,] equity will visit the loss upon the one by whose act the injury first could have been avoided." Global Am. Ins. Managers v. Perera Co., 137 N.J.

Super. 377, 388 (Ch. Div. 1975), aff'd o.b., 144 N.J. Super. 24 (App. Div. 1976). In short, to establish equitable estoppel, a party must show another engaged in conduct, either intentionally or under circumstances that induced reliance and, relying on that conduct, the person acted or changed a position to his or her detriment. Miller v. Miller, 97 N.J. 154, 163 (1984).

"[T]he doctrine of unclean hands may be considered simultaneously with estoppel to help ensure justice and to protect the integrity of the courts." Heuer v. Heuer, 152 N.J. 226, 238 (1998). The essence of the doctrine is that "[a] suitor in equity must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings." Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 169 N.J. 135, 158 (2001) (alteration in original) (quoting A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 246 (1949)). The doctrine "gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Ibid. (quoting Faustin v. Lewis, 85 N.J. 507, 511 (1981)). Application of the doctrine rests within the sound discretion of the trial court. Heuer, 152 N.J. at 238.

Here, we discern no abuse of discretion in Judge Hansbury's application of laches, estoppel, and unclean hands to bar plaintiff's claims. Plaintiff had ample time and opportunity to

rectify the error. Its failure to do so was inexcusable and detrimental to the Paradigm defendants, which acted in reliance on a title search that, due to plaintiff's acts and omissions, deemed the property free from any encumbrances. To the extent we have not addressed a particular argument advanced by plaintiff, it is because either our disposition makes it unnecessary or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1706-16T4