**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1036-23

MARY ROSE 22, LLC,

      Plaintiff-Respondent,

v.

BLOCK 270, LOT 14
65 CLAREMONT AVENUE,
TOWNSHIP OF IRVINGTON,
STATE OF NEW JERSEY
ASSESSED TO:  ROSA E.
ALVAREZ-LOJA, ALFREDO
ALVAREZ and JOSE E.
ANGAMARCA,

      Defendants-Appellants,

and

BLACKBALL, LLC,

      Defendant/Intervenor-
      Respondent.

_____

Argued May 13, 2025 – Decided May 30, 2025

Before Judges Susswein, Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. F-006378-22.

Stephen B. McNally argued the cause for appellants (McNallyLaw, LLC, attorneys; Stephen B. McNally, on the briefs).

Amber J. Monroe argued the cause for respondent Mary Rose 22, LLC (Gary C. Zeitz, LLC, attorneys; Amber J. Monroe and Robin London-Zeitz, on the briefs).

Elliott J. Almanza argued the cause for intervenor-respondent Blackball, LLC (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Keith A. Bonchi and Elliott J. Almanza, of counsel and on the briefs).

PER CURIAM

In this tax sale foreclosure, defendants Rosa E. Alvarez-Loja, Alfredo Alvarez, and Jose E. Angamarca appeal from the Chancery Division's: April 3, 2023 order denying without prejudice their Rule 4:50-1 motion to vacate the default final judgment entered in favor of plaintiff Mary Rose 22, LLC (Mary Rose); September 27 order denying intervenor Blackball LLC's motion to compel and extend discovery; and November 15 order denying defendants' motion to reconsider the April 3 and September 27 orders. Having reviewed the record, parties' arguments, and applicable legal principles, we reverse and remand for further proceedings.

A-1036-23

I.

To give context to the issues presented on appeal, we review the governing statutory framework at the time the trial court entered the final judgment. New Jersey's Tax Sale Law (TSL), N.J.S.A. 54:5-1 to -137,[1] "serves 'as a framework to facilitate the collection of property taxes.'" In Re Princeton Office Park L.P. v. Plymouth Park Tax Servs., LLC, 218 N.J. 52, 61 (2014) (quoting Varsolona v. Breen Cap. Servs. Corp., 180 N.J. 605, 620 (2004)). When a property owner fails to pay property taxes, the TSL grants the municipal government a "continuous lien" on the property for the unpaid taxes owed, in addition to any "penalties and costs of collection." N.J.S.A. 54:5-6. "The [TSL] converts that lien into a stream of revenue by encouraging the purchase of tax certificates on tax-dormant properties." In Re Princeton Office Park L.P., 218 N.J. at 62 (quoting Simon v. Cronecker, 189 N.J. 304, 318 (2007)). A tax sale certificate is created and sold when a municipality "enforce[s] the lien by selling the property as prescribed by [N.J.S.A. 54:5-19]." Cherokee LCP Land, LLC v.

---

[1] In July 2024, the New Jersey Legislature amended the TSL, L. 2024, c. 39 and included that the "act shall have no effect on any foreclosure action in which a final judgment has been entered prior to the effective date of this act." L. 2024, c. 39 § 11.

City of Linden Plan. Bd., 234 N.J. 403, 415 (2018) (second alteration in original) (quoting Varsolona, 180 N.J. at 617).  "[B]y creating an alternate stream of revenue for delinquent taxes, and providing for tax foreclosures by private lienholders, the TSL enables municipalities 'to obtain the payment of . . . taxes without going into the real estate business.'"  257-261 20th Ave. v. Roberto, 259 N.J. 417, 446 (2025) (quoting Varsolona, 180 N.J. at 618).

While the TSL is remedial legislation to secure the payment of taxes, it also seeks to "'protect property owners' from forfeiture."  BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 128 (App. Div. 2021) (quoting Simon, 189 N.J. at 322 n.10); see also N.J.S.A. 54:5-85.  "Significantly, although the [TSL's] main aim 'is to encourage the purchase of tax certificates, another important purpose is to give the property owner the opportunity to redeem the certificate and reclaim [their] land.'"  BV001 REO Blocker, LLC, 467 N.J. Super. at 128 (quoting Simon, 189 N.J. at 319).

N.J.S.A. 54:5-86(a) (2023) authorized a private tax sale certificate holder to file a foreclosure complaint two years after the sale of a tax sale certificate. An exception to the two-year tax sale foreclosure waiting period existed under N.J.S.A. 54:5-86(b) (2023).  The exception provided that "[a]ny person holding a tax sale certificate on a property that me[t] the definition of abandoned

property" under the Abandoned Property Rehabilitation Act (APRA), N.J.S.A. 55:19-78 to -107, "either at the time of the tax sale or thereafter," was permitted to file an action at any time "demanding that the right of redemption on such property be barred" under the TSL "or the In Rem Tax Foreclosure Act[ (the Act), N.J.S.A. 54:5-104.29 to -104.75]." N.J.S.A. 54:5-86(b). Specifically, the Act allows "any municipality or abandoned property certificate holder" to bring an action in rem "to bar rights of redemption." N.J.S.A. 54:5-104.32.

N.J.S.A. 54:5-86(b) stated that the tax sale certificate holder must provide with its filing a "certification by the public officer or the tax collector that the property is abandoned . . . pursuant to" N.J.S.A. 55:19-83(d). If the tax sale certificate holder failed to obtain a certification of abandonment from a public officer or tax collector, "the certificate holder" was permitted to submit "to the court evidence that the property [wa]s abandoned, accompanied by a report and sworn statement by an individual holding appropriate licensure or professional qualifications" for the court to "determine whether the property me[t] the definition of abandoned property." Ibid. Under APRA, a property may be deemed abandoned if it "has not been legally occupied for a period of six months" and satisfies one of four additional criteria:

> a. The property is in need of rehabilitation in the reasonable judgment of the public officer, and no

rehabilitation has taken place during that six-month period;

b. Construction was initiated on the property and was discontinued prior to completion, leaving the building unsuitable for occupancy, and no construction has taken place for at least six months as of the date of a determination by the public officer pursuant to this section;

c. At least one installment of property tax remains unpaid . . . ; or

d. The property has been determined to be a nuisance by the public officer in accordance with . . . [N.J.S.A. 55:19-82].

[N.J.S.A. 55:19-81.]

Pursuant to N.J.S.A. 55:19-81(d), a property may be found to be a nuisance if:

a. The property has been found to be unfit for human habitation, occupancy or use pursuant to . . . [N.J.S.A. 40:48-2.3];

b. The condition and vacancy of the property materially increases the risk of fire to the property and adjacent properties;

c. The property is subject to unauthorized entry leading to potential health and safety hazards; the owner has failed to take reasonable and necessary measures to secure the property; or the municipality has secured the property in order to prevent such hazards after the owner has failed to do so;

6

d. The presence of vermin or the accumulation of debris, uncut vegetation or physical deterioration of the structure or grounds have created potential health and safety hazards and the owner has failed to take reasonable and necessary measures to remove the hazards; or

e. The dilapidated appearance or other condition of the property materially affects the welfare, including the economic welfare, of the residents of the area in close proximity to the property, and the owner has failed to take reasonable and necessary measures to remedy the conditions.

[N.J.S.A. 55:19-82.]

## II.

On April 20, 2020, defendants purchased a residential property on Claremont Avenue in Irvington (the property) as an investment for $163,000. They purchased the property intending to renovate and convert the existing two-family residence into a three-family residence.

Defendants paid Irvington property taxes through the third quarter of 2021, but they failed to pay the fourth quarter taxes. Irvington is an "accelerated tax sale municipality," which allows for tax certificate sales in the same year the property taxes are due. Therefore, Irvington ensures that after "November 11[]," "any properties with delinquencies . . . [are] included in the accelerated tax sale." "After November 11[], Tax Sale Notices," are mailed for "past-due accounts,"

7

which would include unpaid fourth quarter taxes.  Irvington mailed defendants' tax bills to the property.  Defendants allege they did not receive a delinquency notice.

On December 16, 2021, FIG purchased a tax sale certificate from Irvington for defendants' unpaid property taxes of $1,420,73, representing the unpaid fourth quarter taxes plus interests and costs.  On February 15, 2022, FIG recorded the tax sale certificate with the Essex County Register.  It also paid the real estate taxes for the first and second quarters of 2022.  On December 15, FIG purchased a tax sale certificate for defendants' third and fourth quarter taxes.

Meanwhile, in 2021, defendants filed a land use application with the Irvington Zoning Board seeking site plan and variance approval under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -171.  The Board heard defendants' application on December 7, 2021, and January 18, 2022.  On February 15, after hearing from defendant's expert planner, considering the expert's plans, and reviewing other evidence, the Board granted defendants' final site plan approval and use variance application, pursuant to N.J.S.A. 40:55D-70(d)(1).  The Board permitted defendants "to convert the[ir] existing two-family dwelling to a three-family dwelling."

In January 2022, Derek Leary, a licensed construction official and building inspector, allegedly inspected defendants' property for FIG and determined it was abandoned. He completed a pre-printed, two-page form certifying that the "[p]roperty [wa]s abandoned pursuant to N.J.S.A. 55:19-81 because the [p]roperty ha[d] not been legally occupied for at least six . . . months preceding the date of" the report. Leary checked off boxes on the pre-printed form, attesting that the property: was "in need of rehabilitation"; "ha[d] been found to be unfit for human habitation, occupancy[,] or use"; had a "materially increase[d] . . . risk of fire" because of its "condition and vacancy"; "[wa]s subject to unauthorized entry leading to potential health and safety hazards[, and] the owner ha[d] failed to take reasonable and necessary measures to secure the property"; had a "presence of vermin or the accumulation of debris, uncut vegetation or physical deterioration of the structure"; and had a "dilapidated appearance or other condition" that "materially affect[ed] the welfare . . . of the residents" in "the area." He stated that there were "no utilities" at the property, though it was later determined the property had utility boxes. Leary also listed that the "soffit, fascia, gutters, [and] window" required repair. He attached to his certification multiple photographs showing: a boarded-up residence, no utility boxes, missing gutters, missing windows, a dilapidated roof, no

vegetation, and a damaged entrance stairway. However, the photographs were not of defendants' residence but of a different property.

FIG served defendants with pre-foreclosure notices by regular and certified mail.[2] On May 6, FIG requested that the Irvington tax collector certify the property was abandoned, which went unanswered. On June 22, FIG filed an in rem tax foreclosure complaint. FIG alleged it was "an abandoned property certificate holder as defined in N.J.S.A. []54:5-104.30(h)" and was "eligible" to seek an immediate tax sale certificate foreclosure pursuant to N.J.S.A. 54:5-86(b) because defendants had not redeemed the tax sale certificates.

On September 14, FIG filed a motion to declare the property abandoned. In support of its application, FIG attached Leary's abandoned property certification, and a representative of FIG later certified that the pictures attached to Leary's report were "of the [p]roperty." On October 7, the first judge presiding over this matter issued an order accompanied by a written decision finding the property was "an abandoned property pursuant to N.J.S.A. 55:19-81 and N.J.S.A. 54:5-86(b)." The first judge relied on Leary's report and stated he

---

[2] At oral argument before us, defendants' counsel acknowledged it was undisputed that FIG complied with service requirements throughout the litigation.

reviewed the attached "photographs depict[ing] a wood boarded front and front roofing torn and exposed."

On October 19, the Irvington tax collector executed an affidavit of non-redemption pursuant to N.J.S.A. 54:5-86. He attested that "no part of the amounts alleged to be due in the [c]omplaint filed in this action on account of the tax lien certificates and subsequent tax liens affecting the property ha[d] been paid."

On November 7, a second judge entered default final judgment for $4,246.67. The same day, the second judge also granted Mary Rose's motion to be substituted for FIG by virtue of the tax sale certificate assignments. On December 12, Mary Rose executed a quit claim deed, transferring the property to Blackball for the purchase price of $140,000. The deed specifically referenced that the "land and premises [were] acquired by Mary Rose . . . , by [f]inal [j]udgment entered by the Superior Court of New Jersey, Chancery Division on November 7, 2022, at [d]ocket [n]umber F-6378-22." Further, the deed provided that Mary Rose "ma[de] no promises as to ownership or title, but simply transfer[red] whatever interest the Grantor ha[d] to the Grantee."

On February 2, 2023, defendants moved under Rule 4:50-1(a), (d), and (f) to vacate the final judgment. They challenged "the accelerated in rem

11

A-1036-23

foreclosure process utilized by . . . [p]laintiff . . . [as] predicated upon an improper designation of the [p]roperty as vacant." Defendants argued that because the first judge erroneously entered the order finding the property abandoned, based on patently incorrect information, the final judgment must be vacated. Blackball thereafter cross-moved to intervene in the tax sale foreclosure as an interested party, having purchased the property from Mary Rose. Blackball represented that it was a bona fide purchaser of the property for value.

On April 3, the first judge issued a comprehensive, sixteen-page written decision granting Blackball's cross-motion to intervene and denying defendants' motion to vacate the final judgment without prejudice. The first judge set a ninety-day discovery schedule because he determined defendant had made a prima facie showing that jurisdiction to enter the judgment was "reasonably in question." He recited that under Rule 4:50-1(d), "a judgment may be set aside as void if the rendering court lacked subject matter jurisdiction," citing Ganz v. Rust, 299 N.J. Super. 324, 327 (App. Div. 1997). The first judge also noted that "a judgment is void if there has been a failure to comply with a requirement which is a condition precedent to the exercise of jurisdiction by the court," quoting James v. Francesco, 61 N.J. 480, 485 (1972). He found that "if the

12

abandonment order was wrong or entered in error, the court prematurely exercised subject matter jurisdiction." The first judge noted it was undisputed that Leary's certification included photographs of the wrong property, which he had "relied upon . . . in determining the property was abandoned." The first judge stated, "It is inescapable that wrong photos provided, at least in part, the foundation for the [first judge's] conclusion."

In addressing Mary Rose's argument that defendants did not rebut Leary's abandoned property certification and Blackball's argument that defendants did not meaningfully contest the statutory elements of abandonment, the first judge found the "arguments [we]re without merit" and highlighted that chancery judges are charged to fashion equitable remedies when warranted. He determined defendants had "contradicted the Leary certification" because: it was unclear whether Leary "ever inspected the property"; "there [w]as no basis for the conclusion that the property was not legally occupied for the six months preceding inspection"; Leary "made no effort to investigate the work undertaken at the property"; Leary "drew conclusions that could not have been supported by an 'inspection of the exterior of the property'"; "the property [wa]s reasonably maintained and structurally intact and apparently fit for habitation"; "there [wa]s no debris or vermin"; Leary's "handwritten notes regarding the 'gutter and fascia'

13

'[we]re wrong'"; and "the correct picture of the property 'show[ed] electrical meters on the side of the property'" evidencing a utility connection. Further, the first judge found that the additional evidence, including "photos and videos" and a description of the property, Blackball submitted to support abandonment was "unsupported by a 'report and sworn statement by an individual holding appropriate licensure or professional qualifications'" pursuant to N.J.S.A. 54:5-86(b) and N.J.S.A. 55:19-81(b).

In addressing defendants' motion to vacate the final judgment under Rule 4:50-1(f), the first judge found defendants: established there was "minimal delay in 'making the application' to vacate," which weighed "in favor of vacating the default final judgment"; satisfactorily explained the reason for delay; could not "avoid blame for their failures to respond"; and had not established there was no prejudice, highlighting that Blackball allegedly was a bona fide purchaser and discovery was required. Relevantly, the first judge held "[t]he parties w[ere to] return for further motion practice or [a] plenary hearing" to address "the issue of abandonment" and "whether Blackball was a bona fide purchaser for value." (Emphasis added). In ordering discovery and further proceedings, the first judge observed "the unique circumstances of th[e] case."

14

On August 11, after the parties completed limited discovery, and the ninety-day discovery period expired, Blackball moved to compel discovery and requested an extension of the discovery period. Blackball and defendants had unsuccessfully attempted to settle the matter. Although the motion was unopposed, a third judge denied the motion. She stated, "The motion to vacate [the] final judgment, which was conditionally denied by [the first judge] on April 3, 2023, hereby remains in effect without conditions and this court confirms that [the] final judgment shall not be vacated." Defendants' counsel argued defendants only speak Spanish, which presented issues with completing the answers to interrogatories, but defendants served responses. The third judge found counsels' stipulated agreement to continue discovery did not "mean that [they] get it." She stated that the "idea that [she] would compel responses at th[at] point seem[ed] pretty futile," and she was "at a loss as to why [she] would allow anything else to happen." The third judge noted that the case proceeded "in an unusual way" but reasoned defendants failed to move "to continue discovery" and found no "exceptional circumstances" or "good cause."

On October 17, defendants moved for reconsideration of the first judge's order denying their motion to vacate and the third judge's order denying Blackball's motion to extend discovery. Regarding the motion to vacate the final

15

judgment, defendants argued the first judge's decision demonstrated that he only partially denied their motion to vacate the final judgment, which reserved on whether he correctly deemed the property abandoned and Blackball's bona fide purchaser status. Defendants argued FIG wrongly proceeded with an expedited abandoned property tax sale foreclosure because Leary's certification included incorrect property photographs and information. They highlighted the first judge's decision opened the matter for discovery and later substantive proceedings.

Defendants also argued the third judge should have considered their discovered public records illustrating Blackball was a sophisticated tax lien foreclosure property purchaser. They posited that the documents showed Blackball was not a bona fide purchaser, as it had constructive notice of Mary Rose's defective abandoned property foreclosure. They referenced forty-five instances where Blackball or affiliated entities filed tax lien foreclosure documents for other properties to support Blackball's: familiarity with tax sale foreclosures; understanding of the unique process; and knowledge of property owners' interests. Defendants argued Blackball regularly purchased tax-foreclosed properties within sixty days of a final judgment to act as a clearing house for properties under the shield of being a bona fide purchaser and that

16

defendants' loss of equity would be unjust. Further, defendants highlighted Blackball had constructive notice of the foreclosure docket filings, including the records showing that the first judge certified the property as abandoned based on incorrect information, and the Board's resolution granting defendants final site plan and (d)(1) variance approval was public record. Defendants represented they stored thousands of dollars of construction materials at the residence because they were awaiting permits, which was "sufficient to place Blackball on notice" that the property was not abandoned.

Defendants averred Blackball's sophistication in tax sale foreclosures afforded it constructive knowledge of readily accessible relevant records, which demonstrated the tax sale foreclosure was for approximately $8,000 in 2022, defendants had purchased the property in 2020 for $163,000, and the property was in the process of development. Defendants argued reconsideration was warranted because the failure to vacate the final judgment would result in a significant loss of equity, including defendants' "life savings," which they invested to develop the property.

Regarding reconsideration of the third judge's denial of further discovery, defendants represented discovery was propounded on June 23, 2023, before the ninety-day discovery period had expired. They emphasized the parties

17

consented to extend discovery, and the first judge had clearly established that the case should proceed on the merits after he made a preliminary finding that the equities balanced in defendants' favor.

In opposition, Blackball's managing member's certification acknowledged his experience in tax sale foreclosures through "various businesses" and the purchase of "properties that have been tax-foreclosed." He represented that Blackball was a bona fide purchaser from Mary Rose. He averred the property was abandoned, providing different photographs, this time of the correct house, showing the residence in a state of "disrepair."

On November 15, 2023, the third judge denied defendants' motion for reconsideration. The third judge found that further discovery was unwarranted, as the ordered discovery period expired, and counsel's consent to Blackball's motion to compel and extend discovery was irrelevant. The third judge reasoned that defendants failed to separately move to reopen discovery. In denying defendants' motion, the third judge declined to consider the public records defendants proffered to show Blackball's tax foreclosure knowledge and constructive notice that the property was not abandoned, finding defendants could have previously discovered and presented the public records.

18

On appeal, defendants contend: vacation of the final judgment is warranted pursuant to Rule 4:50-1 (d) or (f) and based on Tyler v. Hennepin County, 598 U.S. 631 (2023) and Roberto,[3] as the forfeiture of their equity is extreme, and they are entitled to pipeline retroactivity; the judges erred in failing to vacate the final judgment under Rule 4:50-1(d) and (f) because Leary's certification was patently flawed; and the final judgment should be vacated because they made a "prima facie" showing that Blackball is not a bona fide purchaser for value without notice, as the first judge found.

## III.

We review a motion to vacate a final judgment under Rule 4:50-1 for an abuse of discretion. Roberto, 259 N.J. at 436. "A court abuses its discretion 'when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Parke Bank v. Voorhees Diner Corp., 480 N.J. Super. 254, 262 (App. Div. 2024) (quoting Mims v. City of Gloucester, 479 N.J. Super. 1, 5 (App. Div. 2024)).

"Rule 4:50-1 provides for relief from a judgment [or order] in six enumerated circumstances." D.M.C. v. K.H.G., 471 N.J. Super. 10, 26 (App.

---

[3] We requested that the parties submit supplemental briefing after our Supreme Court decided Roberto and have incorporated those arguments in this opinion.

Div. 2022) (quoting <u>In re Est. of Schifftner</u>, 385 N.J. Super. 37, 41 (App. Div. 2006)). "[T]he rule is a carefully crafted vehicle intended to underscore the need for repose while achieving a just result." <u>Ibid.</u> (quoting <u>DEG, LLC v. Township of Fairfield</u>, 198 N.J. 242, 261 (2009)). <u>Rule</u> 4:50-1 states:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under [<u>Rule</u>] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

<u>Rule</u> 4:50-2 provides that "[t]he motion shall be made within a reasonable time, and for reasons (a), (b) and (c) of <u>R[ule]</u> 4:50-1 not more than one year after the judgment, order or proceeding was entered or taken." N.J.S.A. 54:5-87 (2023) limited vacating a "judgment after three months from the date thereof, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit."

20

See also N.J.S.A. 54:5-104.67 (providing similar three-month limitation to reopening a judgment for an in rem tax foreclosure).

"If a judgment is void and, therefore, unenforceable, it is a particularly worthy candidate for relief [under] []R[ule] 4:50-1(d)[,] provided that the time lapse is not unreasonable and an innocent third party's rights have not intervened." Bank v. Kim, 361 N.J. Super. 331, 336 (App. Div. 2003). "A Rule 4:50-1(d) motion, based on a claim that the judgment is void, does not require a showing of excusable neglect but must be filed within a reasonable time after entry of the judgment." Deutsche Bank Nat'l Tr. Co. v. Russo, 429 N.J. Super. 91, 98 (App. Div. 2012).

Rule 4:50-1(f) is a "catch-all" provision incapable of categorization. DEG, LLC, 198 N.J. at 269-70. It allows for relief in "exceptional situations" where hardship has been shown and, as such, its "boundaries 'are as expansive as the need to achieve equity and justice.'" Roberto, 259 N.J. at 436 (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 290 (1994)); see also U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 484 (2012) (finding a party must demonstrate exceptional circumstances to obtain relief under Rule 4:50-1(f)). We have further recognized "important factors" to be considered in deciding whether relief in such circumstances should be granted, including "(1) the extent

21

of the delay in making the application; (2) the underlying reason or cause; (3) the fault or blamelessness of the litigant; and (4) the prejudice that would accrue to the other party." Parker v. Marcus, 281 N.J. Super. 589, 593 (App. Div. 1995).

## IV.

## A.

We first address defendants' contentions that the third judge erred in denying reconsideration of their motion to vacate the final judgment and Blackball's motion to compel and extend discovery. Specifically, defendants argue the third judge erroneously denied vacating the final judgment, as defendants established Mary Rose wrongfully obtained the judgment based on a flawed abandonment determination, which permitted the accelerated in rem tax foreclosure. Defendants contend the third judge "effectively terminat[ed their] motion to vacate without [a] . . . hearing," disregarding that the first judge had found defendants made a prima facie showing to vacate the final judgment and that Blackball's motion to compel and extend discovery was unopposed.

In denying defendants' motion for reconsideration, the third judge initially found there was no "motion . . . to keep this case going to continue discovery." She reasoned that defendants had failed "to take advantage of the discovery

period provided to them" and never reopened discovery. We disagree with the third judge's constricted view. Notably, Blackball's counsel certified that the parties agreed to extend discovery and specifically requested to "extend the discovery period so that this matter can be resolved in accordance with the way [the first judge] envisioned." (Emphasis added). A review of his certification and the motion exhibits reveal the parties' consented to extend discovery, defendants had answered interrogatories and filed discovery requests before the ninety-day discovery period expired, and Blackball and defendant had unsuccessfully attempted a "settlement." While Blackball filed its motion after the discovery period expired, the third judge erred in not applying the good cause standard and not permitting discovery, as there was no set return date or plenary hearing date scheduled, and Blackball's request to extend discovery was with consent.

We conclude the unique procedural posture of the case supported permitting further discovery, because at a minimum, defendants made a prima facie showing that the property was not appropriately deemed abandoned. The first judge had denied defendants' application without prejudice, specifically ordering discovery and further substantive proceedings. He identified the issues warranting later review. He expressed legitimate concerns surrounding Mary

A-1036-23

Rose proceeding with an in rem tax foreclosure based on incorrect abandoned property information and Blackball's bona fide purchaser status. While the first judge denied defendants' motion to vacate without prejudice, he had essentially granted in part defendants' motion to vacate by ordering discovery and further court proceedings. Problematically, based on the posture of the action, there was no: plenary hearing scheduled; future case management conference set; and motion filing deadlines. The parties reasonably believed they could consent to continue discovery and thereafter move to return before the court. Stated another way, the parties clearly shared the belief that the first judge intended the parties to conclude discovery and to thereafter move for further proceedings with the court. We discern that the assignment of a new judge to the matter and different interpretations of the order for future proceedings compounded the confusion.

Moreover, the third judge acknowledged the case proceeded "in an unusual way." We also note the third judge cited no authority for the proposition that counsel could not consent to continue discovery when there was no return date established. But cf. Leitner v. Toms River Reg'l Schs., 392 N.J. Super. 80, 93 (App. Div. 2007) (refusing to extend a discovery end date for a docketed, track-assigned case was an abuse of discretion under Rule 4:24-1 "given the

purpose and goals of Best Practices, the lack of prejudice to [opposing party], the extreme prejudice to the . . . plaintiffs, the lack of a trial date[,] and the need for" resolving disputes "on the merits whenever possible").  For these reasons, we reverse and remand for the parties to expeditiously complete discovery.

We further address defendants' contention that they have since "establish[ed] an independent basis" to warrant vacating the final judgment under Rule 4:50-1(d) and (f).  Defendants alternatively posit they are entitled to a plenary hearing based on the fact that Leary presented inaccurate information, and Blackball's bona fide purchaser status is questionable.

A judge reviewing a Rule 4:50 motion should consider equitable principles and that a request to vacate a default judgment "be viewed with great liberality," with "every reasonable ground for indulgence . . . tolerated to the end that a just result is reached."  Hous. Auth. of Morristown, 135 N.J. at 283-84 (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 318-19 (App. Div. 1964), aff'd, 43 N.J. 508 (1964)).  When reviewing a Rule 4:50-1 motion "[i]n the tax sale certificate foreclosure context[,] considerations of public policy and equity are also taken into account."  M & D Assocs. v. Mandara, 366 N.J. Super. 341, 350 (App. Div. 2004).

Notably, FIG did not obtain a certification from an Irvington tax official declaring the property abandoned; thus, under N.J.S.A. 54:5-86(b), it was required to obtain a court order declaring the property abandoned. FIG was required to provide the court with accurate "evidence that the property [wa]s abandoned, accompanied by a report and sworn statement by an individual holding appropriate licensure or professional qualifications." Ibid. The first judge acknowledged ordering the property abandoned based on Leary's incorrect photographs and information, which was critical to the tax foreclosure proceeding in an expedited fashion. We agree with the first judge that defendants substantiated a sufficient initial showing of errors to question whether the property was abandoned, including Leary's incorrect photographs depicting a torn roof, lack of proof that the property was abandoned for six months, and statement that there were no utilities. Again, we note Leary's report is a pre-printed, two-page check-the-box form with scant required details. Therefore, we discern sufficient cause existed for a plenary hearing after the completion of discovery.

It also bears noting that FIG purchased the tax sale certificate in December 2021. Had FIG pursued a tax sale foreclosure under N.J.S.A. 54:5-86(a), the action could not have been instituted until after December 2023. Stated another

26

way, the first judge's determination that the property was abandoned allowed FIG to institute its in rem tax foreclosure prosecution under N.J.S.A. 54:5-86(b) almost eighteen months earlier than it would have been able to under N.J.S.A. 54:5-86(a). This afforded defendants significantly less time to redeem, presenting significant undue prejudice to defendants if plaintiff secured the order of abandonment in error.

We further discern no reason why defendants are precluded from introducing evidence of Blackball's sophistication with tax sale foreclosures, including public records of its purchases of properties shortly after the entry of a final judgment. The third judge referenced no authority in support of her determination that defendants were required to procure records against a non-party purchaser prior to filing its motion to vacate the final judgment. Importantly, the first judge specifically directed discovery on Blackball's bona fide purchaser status after permitting its intervention. We agree with the first judge that such information is highly relevant. Blackball's experience and knowledge of tax sale foreclosures, in conjunction with Mary Rose's expeditious property sale, are relevant to a determination of whether Blackball was a bona fide purchaser with constructive notice of the issues surrounding defendants' property abandonment and defendants' interests.

A-1036-23

A bona fide purchaser for value is one who takes title to property without notice of a prior interest "and has paid a valuable consideration therefor[e]." Monsanto Emps. Fed. Credit Union v. Harbison, 209 N.J. Super. 539, 542 (App. Div. 1986) (quoting Venetsky v. W. Essex Bldg. Supply Co., 28 N.J. Super. 178, 187 (App. Div. 1953)). "The statutes have been consistently interpreted to mean that the subsequent purchaser will be bound only by those instruments which can be discovered by a 'reasonable' search of the particular chain of title." Palamarg Realty Co. v. Rehac, 80 N.J. 446, 456 (1979). "A purchaser may well be held bound to examine or neglect at his [or her] peril, the record of the conveyances under which he [or she] claims . . . ." Phx. Pinelands Corp. v. Davidoff, 467 N.J. Super. 532, 587 (App. Div. 2021) (quoting Glorieux v. Lighthipe, 88 N.J.L. 199, 203 (E. & A. 1915)). "In the context of the race notice statute, constructive notice arises from the obligation of a claimant of a property interest to make reasonable and diligent inquiry as to existing claims or rights in and to real estate." Cox v. R.K.A., Corp., 164 N.J. 487, 496 (2000) (quoting Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 108 (App. Div. 1990)). A prospective purchaser's obligation "to make a reasonable and diligent inquiry in connection with claims or rights in and to real estate[,] or be charged with facts as such an inquiry would uncover," is only imposed where facts are brought

28

to the claimant's attention, "sufficient to apprise him of the existence of an outstanding title or claim, or the surrounding circumstances are suspicious and the party purposefully or knowingly avoids further inquiry." Scult v. Bergen Valley Builders, Inc., 76 N.J. Super. 124, 135 (Ch. Div. 1962) (emphasis omitted), aff'd, 82 N.J. Super. 378 (App. Div. 1964).

We disagree with the third judge's view that "[t]here was nothing open" and "the sophistication of the intervenor [Blackball] . . . was fully available to . . . defendants at the time that it was presented to" the first judge. Her findings ignore that the first judge ordered discovery, left it to the parties' discretion to move for further proceedings, and that Blackball was not a party until the first judge contemporaneously granted its motion to intervene. Importantly, a "[c]hancery judge has broad discretionary power to adapt equitable remedies to the particular circumstances of a given case." Marioni v. Roxy Garments Delivery Co., 417 N.J. Super. 269, 275 (App. Div. 2010). As our Supreme Court has explained, equitable remedies "are distinguished by their . . . adaptability to circumstances." Salorio v. Glaser, 93 N.J. 447, 469 (1983). The first judge's decision fairly opened the matter for further proceedings. Inescapably, a "defect in the judgment is not waivable because it goes to the authority of the court to render the final judgment and is consequently more akin

to a non-waivable lack of subject matter jurisdiction." Bascom Corp. v. Chase

Manhattan Bank, 363 N.J. Super. 334, 341 (App. Div. 2003). Therefore, we

remand for a plenary hearing to address Mary Rose's final judgment based on

defendants' alleged property abandonment and to determine whether Blackball

was a bona fide purchaser.[4]

B.

We next address defendants' argument that the final judgment should be

vacated pursuant to the retroactive application of the United States Supreme

Court's decision in Tyler, because this matter was in the "pipeline" and subject

to review as "filed within the three . . . month limitation contained in N.J.S.A.

54:5-87." See Roberto, 259 N.J. at 440 (recognizing that Tyler "applies to cases

---

[4] We note, in tax sale foreclosure cases where vacating the final judgment is warranted, and a bona fide purchaser has acquired the property, our Supreme Court has charged chancery judges to balance the equities in determining the appropriate relief. Sonderman v. Remington Const. Co., 127 N.J. 96, 109 (1992) (achieving an equitable "result without violating the integrity of the recording system or the need for a liberal construction of the [TSL]").

on direct review in state court").[5] Defendants argue that before the United States Supreme Court decided Tyler in May 2023, they had timely moved to vacate the final judgment, challenging the validity of Mary Rose's tax sale under N.J.S.A. 54:5-86(b) and arguing that substantial equity existed in the property. Undisputedly, defendants had timely moved to vacate under Rule 4:50-2 and N.J.S.A. 54:5-87. Also, it is undisputed that Mary Rose and Blackball were on notice that defendants specifically alleged: FIG wrongly obtained the final judgment based on Leary's misrepresented information, and significant equity existed in the property. Accordingly, because the first judge ordered discovery and further proceedings, they argue their matter was under review. The third judge did not address the parties' arguments regarding Tyler, stating pipeline retroactive application might "apply if in fact the motion to vacate is granted."

---

[5] We note in Roberto, our Supreme Court did not "determine whether full retroactivity is warranted in other cases." 259 N.J. at 442 n.3. The Court "decline[d] to address or adopt the appellate court's analysis of" pipeline retroactivity. Ibid. The Court also did not decide "a related question" that had not been raised below about "whether a party may file a claim for just compensation alone when a foreclosure has been finalized and a taking of equity has already occurred, but the taking is within the relevant statute of limitations." Ibid. Further, our Supreme Court "[s]pecifically . . . ma[de] no finding about whether . . . [its] ruling extends to in rem foreclosures of abandoned property." Id. at 449 n.4 (emphasis added).

See Rule 1:7-4 (requiring trial courts to make sufficient "find[ings] [of] . . . fact[] and state . . . [their] conclusions of law").

While we agree with defendants' argument that the matter was open for further judicial review, that conclusion alone does not resolve the question of Tyler's application.  Generally, a tax sale foreclosure matter that is pending on direct appeal or opened based on a successful application is subject to the retroactive application of Tyler.  When the United States Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate . . . [its] announcement of the rule."  Roberto, 259 N.J. at 440 (quoting Harper v. Va. Dep't of Tax'n, 509 U.S. 86, 97 (1993)).  We are satisfied that the unique facts in the present matter qualified this tax sale foreclosure as pending further review before the court.

However, the United States Supreme Court in Tyler recognized that a distinction exists in the application of the Takings Clause of the Fifth Amendment to abandoned property in the tax foreclosure context.  598 U.S. at 646.  It has long been "recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time."

<u>Texaco, Inc. v. Short</u>, 454 U.S. 516, 526 (1982). "In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, [the United States Supreme] Court has never required the State to compensate the owner for the consequences of his own neglect." <u>Id.</u> at 530. Relevantly, regarding abandoned property in the context of a tax sale foreclosure, the United States Supreme Court in <u>Tyler</u> highlighted that there would be "no taking" because "after abandonment, the former owner retain[s] no interest for which he may claim compensation." 598 U.S. at 646 (quoting <u>Texaco</u>, 454 U.S. at 526). Additionally, the United States Supreme Court has elucidated that "[i]t is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the

33

property right; there is no 'taking' that requires compensation." Texaco, 454 U.S. at 530; see also Tyler, 598 U.S. at 647.[6]

Neither the parties nor the third judge addressed the distinction that Tyler's holding drew regarding the application of the Takings Clause to abandoned property. As we have concluded a full plenary hearing is necessary to address whether the property was correctly deemed abandoned and Blackball's bona fide purchaser status, on remand, if warranted, the judge shall additionally provide findings on the issue of Tyler's application to abandoned property after the plenary hearing.

## C.

In sum, we conclude the parties shall be provided the opportunity to complete discovery, and a plenary hearing shall be afforded regarding whether

---

[6] We note the New Jersey Legislature recently recognized the distinction regarding abandoned property in N.J.S.A. 54:5-104.64(a), which provides, "In an action commenced by any person or a municipality holding a tax sale certificate for an abandoned property pursuant to [N.J.S.A. 54:5-86(b)], the judgment shall give full and complete relief . . . to bar claims to surplus equity, . . . except as set forth in [N.J.S.A. 54:5-104.64(d)] . . . . ," which provides that "[i]n an action brought by a municipality, in order to preserve any equity that may exist in the property being foreclosed, the owner, . . . shall have the right to demand, . . . before . . . final judgment is entered, that the municipal tax sale certificate be foreclosed with a judicial sale." If the property owner does "not demand a judicial sale, . . . the municipality may proceed in rem without a judicial sale, . . . . [and] [t]he amount received . . . shall be conclusively presumed to be . . . fair market value." N.J.S.A. 54:5-104.64(d).

A-1036-23

the property was deemed abandoned based on Leary's flawed submissions and Blackball's bona fide purchaser status. The judge on remand must first address whether the final judgment should be vacated under Rule 4:50-1(d), which does not require a showing of excusable neglect or a meritorious defense, and Rule 4:50-1(f). Thereafter, the judge shall address Blackball's bona fide purchaser status. We understand the extent of any court-afforded relief to defendants depends on the outcome of each issue. We express no opinion as to the ultimate outcome other than discerning genuine factual disputes clearly exist. Further, on remand, if warranted after the plenary hearing, the court shall address the application of Tyler and Texaco to abandoned property. We therefore reverse and remand for further proceedings consistent with our opinion.

To the extent that we have not addressed the parties' remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1036-23